STATE, Respondent, v. MILLER, Appellant.

*May 12—June 6, 1967.*

---

462

For the appellant there was a brief and oral argument by *Owen F. Monfils* of Green Bay.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Robert R. Flatley,* district attorney of Brown county.

BEILFUSS, J. The defendant upon appeal does not argue that the evidence was insufficient to convict him but does contend that the trial court did commit prejudicial errors. His allegations of error are summarized in the following issues:

(1) At the hearing on the voluntariness of admissions, did the trial court err in limiting the testimony of the police officers to the facts and circumstances under which the defendant's admissions were given?

(2) Does *Miranda* render inadmissible in evidence the oral admissions made by the defendant to the police officers?

(3) Did the trial court err in denying the defendant's pretrial requests:

(a) That the defense should be permitted to have the complaining witness examined by a qualified psychiatrist?

(b) that the guardian of the minor, a licensed child welfare agency, turn over whatever records it may have

concerning the mental condition of the complaining witness; and

(c) that the state be ordered to turn over to the defense whatever records it may have concerning the mental condition of the complaining witness?

At the hearing conducted by the trial court on June 1st to determine the voluntariness of the admissions made by the defendant to the police, the police were not required to state exactly what the admissions were although they did state in general terms the content of the admissions. At the hearing defendant's counsel on cross-examination demanded to know the exact statements made by the defendant to the officers. The district attorney's objections to these questions were sustained by the court. In so ruling the court stated that the sole purpose of the pretrial hearing was to determine the voluntariness of any admissions or statements given and that content of the statements or admissions, the truthfulness and the weight and credibility were to be determined by the jury if the court found that the defendant voluntarily made the statements to the police. The trial court suggested to the district attorney that he advise defense counsel generally as to the content of the admission. The district attorney did so and advised defense counsel and the trial court (on the record) that they had no written statements and that he intended to call the officers to testify at the trial and that their testimony would be about as it was in this hearing and that he proposed to show the defendant admitted he had had sexual intercourse with the complaining witness about 10 times.

In making its ruling the trial court relied upon *State ex rel. Goodchild v. Burke, supra,* at page 264:

"At the hearing on the issue, the trial judge sitting alone shall make a determination upon a proper record upon the issue of voluntariness. The state shall have the burden of proving voluntariness beyond a reasonable doubt. At this hearing the defendant may take the stand

and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained."

The sole purpose of the hearing was to have the court make an informed finding on the voluntariness of a confession or admission. It is not the function of the court at that stage to determine the weight and credibility of confession or admission nor the accuracy of the witness relating it at the trial. These are functions of the jury (or the court) at the trial. However, in order to make the hearing on preliminary determination of voluntariness informed and meaningful, at least the general substance of the confession or statement should be made known both for the benefit of the court and the defense counsel. In this instance the testimony of the officers and the statement of the district attorney on the record were sufficient to satisfy this need. The trial court was not in error.

In like situations the trial court must exercise its discretion as to how extensive the revelations of the state must be. The purpose of the hearing is to determine voluntariness and it is not to be converted to an adverse pretrial discovery hearing.

At the trial which commenced in July, 1966, and before the selection of the jury, the defendant made a motion to dismiss partly upon the ground that the statements and admissions made to the police officers were inadmissible in evidence under the rule of *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694. The defendant contends that after he told the police he wanted to contact his lawyer no statement or admissions of any kind could be taken.

*Miranda* was not made retroactive and affected only those trials which commenced after the date of the decision, June 13, 1966. (See *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882.)

The state argues that *Miranda* does not apply because the ruling on the admissions was made by the court on June 1, 1966, which was before the effective date of *Miranda*.

Without belaboring the point, we conclude the United States supreme court in the *Johnson Case* meant the day the trial actually started. It was on July 13, 1966, after the effective date of *Miranda*, that the trial actually started. It was on this day when witnesses were sworn and testified against Miller so that he was put in jeopardy and not before. The rule of *Miranda* announces an evidentiary exclusionary rule. The motion was made before the actual commencement of the trial and the trial court could have reviewed its ruling on voluntariness in light of the *Miranda* decision without fatal procedural consequences to the state.

Even though we hold that this trial commenced after the effective date of *Miranda*, we conclude without hesitation that it has no application to the case at hand.

The summary of the rule of *Miranda* is as follows, at page 444:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to

the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

*Miranda,* at page 478, explicitly excepted volunteered statements:

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

In the case at bar the record is clear that the oral admissions of the defendant were given before he was questioned in any way by the policemen. On January 26, 1966, the police officers went to the defendant's place of employment near quitting time. The defendant met the policemen in the foreman's office, immediately indicated that he knew why they were there, and asked to call his lawyer. The defendant made three or four unsuccessful attempts to contact his attorney, and then was asked by the officers to come down to the police office, which the defendant agreed to do. The defendant was not questioned nor was he advised of his constitutional rights. When asked why the defendant was not advised of his rights at his place of employment, Detective Cuene explained what appears to be commendable police practice:

"Under the circumstances, when you go into a place of private employment we feel that it is none of the other people's business why we are talking to somebody. And if we stand there in front of other employees and start advising him of his rights of his constitutional rights, if he is involved in something; it gets kind of embarrassing. Many times the Foreman will ask us what's up; or why do the Police want him? We inform the people, the foreman or store manager, that we feel that the subject might have some information that would be of value to the Police Department. And we feel at the present time that is their own business, and we don't go into detail as to what this is about. And when a man would come into the station voluntarily, which he did; before any questioning would take place, he would be advised of his rights."

The defendant drove his own car, accompanied by Detective Krull, to the police station. During this trip he was not questioned about anything; he volunteered admissions to the officer. Upon arrival at the police station the defendant was advised of his constitutional rights. After this, but before he was questioned about anything, the defendant made oral admissions to the police officers. These were the only admissions used against the defendant at trial. Thus *Miranda* is inapposite because the admissions used against the defendant were volunteered and not the result of "interrogation." This conclusion was found by the trial court on the *Goodchild* hearing and is not really disputed by the defense.

In addition, from defendant's own testimony, he did not consider himself in custody at the time he made the oral admissions. The defendant testified as follows:

"*Q.* And then you say you drove your own car down to the station? *A.* Correct.

"*Q.* Had you been placed under arrest at this time? *A.* No. Evie Krull said we would like to have you come down to the station, we would like to talk to you for a few minutes.

"*Q.* And you went down there voluntarily then? *A.* That's right."

While a defendant being taken down for questioning might be considered "in custody," here we have a former law-enforcement officer, familiar with police procedures, who did not consider himself in custody.

We conclude for two reasons that *Miranda* does not apply. His admissions were volunteered and he was not in custody.

As set forth in the statement of the issues, the defendant made three pretrial requests by motion, (a) that the defense be permitted to have the complaining witness examined by a qualified psychiatrist, (b) for whatever records the guardian child welfare agency might have, and (c) that the state turn over whatever records it might have concerning the mental condition of the complaining witness.

In support of all three of these motions counsel for the defendant filed an affidavit wherein it is alleged in substance that he has a copy of the statement given by Marcia to the police wherein she implicated the defendant and wherein she further implicated a Green Bay police officer to the extent that he was charged with violations of sec. 944.01, Stats. (rape), and sec. 944.10 (statutory rape), and that the charges were dismissed against this officer on the motion of the state and that the assistant district attorney characterized the complainant as "retarded."

The action against the Green Bay officer was heard and determined by the same judge, Honorable JAMES W. BYERS, who presided over this case in its entirety, including the preliminary examination.

A copy of the entire record in the case against the Green Bay officer has been made a part of the appellant's appendix in this appeal. From that record it does not appear that the Green Bay officer was ever charged with rape or statutory rape, but that he was charged with a violation of sec. 944.11 (3), Stats. (indecent behavior with a child). It is this charge that was dismissed

by Judge BYERS on April 29th upon the motion of the district attorney. On the same day the officer was re-arrested and charged with a misdemeanor, sec. 947.15 (1) (contributing to the delinquency of a minor). The new proceeding grew out of the same facts that were the basis of the charge dismissed. The officer entered a plea of guilty to the contributing charge and it was in connection with the plea of guilty to the lesser charge that the assistant district attorney made the statement that Marcia was "slightly retarded."

The affidavit further stated upon information and belief that Marcia had made false accusations of sexual intercourse against other persons and that she had received psychiatric care in the past.

The motion for an independent psychiatric examination of the complaining witness was denied and reasserted just before the commencement of the trial. The trial judge stated it was a question of her competency to testify and that he heard the witness testify (the same judge presided at the preliminary hearing) and that "[she] presented the appearance of being a good witness in the sense of being able to understand the questions that were asked of her; and to comprehend the nature of the proceedings." He further stated that the suggestion that she may be suffering from delusions and prone to falsely accuse persons was pure speculation and denied the motion.

In *Goodwin v. State* (1902), 114 Wis. 318, 320, 90 N. W. 170, this court stated:

"Error is assigned because, after the complaining witness had testified, her cross-examination had been completed, and she had left the stand, on the following day the defendant asked the court, in the exercise of its discretion, to require the complaining witness to submit to an examination to determine whether or not she is afflicted with hysteria. This the court refused, saying that he was satisfied of the competency of the witness, both by previous observation and by her manner of tes-

tifying. Counsel responded that they desired it as a basis for evidence bearing upon her credibility, accuracy of memory, etc. In this ruling we discover no error. Counsel cites us no case, and we confidently believe there is no authority, to support the power of a court, after a witness has completed her testimony and left the stand, to compel her to submit to a medical examination, physical or mental. It would be such an invasion of the rights of personal liberty that arguments far more cogent than any suggested would be necessary to convince us of the existence of such power. Counsel refers to cases where the power of the court to compel examination of parties, more especially in personal injury cases, has been declared. That, of course, stands on an entirely different ground. There the party is seeking a remedy from the court, and, if there is any reason to believe that the facts would be better disclosed by an examination, the court has power, in its discretion, not so much to compel the examination, but to make it a condition of further entertaining the prayer for relief. Nor should we doubt that in a proper case, where the court was seriously doubtful of the mental competency of a proposed witness, he might impose a medical examination as a condition of allowing the witness to testify, to which she might refuse to submit. But the step requested in this case demanded such control as the court could not exercise over a person not a party to the proceeding, and was properly denied."

As pointed out in *Goodwin* in cases where the court has serious doubt of the mental capacity of a witness, in the exercise of its sound judicial discretion, it can order the witness to submit to a medical examination as a condition of allowing the witness to testify. Of course the witness might refuse, but there is no power in the court to compel such an examination.

Because of the possible indignity of such an examination and the natural reluctance of persons to appear as witnesses if they were to be subjected to such examination, we believe a strong and compelling reason should appear before a trial court in the exercise of its discretion should order a medical examination even as a con-

dition of testifying at the trial. We find no abuse of discretion in the trial court's denial of the motion for a pretrial psychiatric examination of the complaining witness.

The defendant's second motion was that complaining witness' general guardian, the Green Bay Catholic Diocese Apostolate, a licensed child welfare agency, turn over whatever records it may have concerning the mental condition of the complaining witness. The trial court denied the motion on the grounds that the records were privileged under sec. 48.78, Stats.

At the trial a case worker for the agency was subpoenaed to appear and bring with her "all records, letters, photographs, medical records, psychiatric records, social history records and all related written material in your possession pertaining to Marcia ———."

An objection was made on the ground that records are privileged communications and cannot be examined except by order of the court under sec. 48.78, Stats., and that medical records, including any psychiatric records, were privileged doctor-patient communications.

Sec. 48.78, Stats., provides:

"**Confidentiality of records.** Records kept or information received by the department, county agencies specified in s. 48.56, licensed child welfare agencies, licensed day care centers and licensed maternity hospitals regarding individuals in their care or legal custody shall not be open to inspection or their contents disclosed except by order of the court. This section does not apply to the confidential exchange of information between these agencies or other social welfare or law enforcement agencies regarding individuals in the care or legal custody of one of the agencies."

The court sustained the objection upon the ground that no order of the court had been obtained to inspect the records; that the records may contain privileged confidential patient-doctor communications and that the records probably contained much hearsay that would not

be subject to cross-examination, either by the defendant or by the state.

The court referred to in sec. 48.78, Stats., is the juvenile court. This trial was in the county court. Judge BYERS, who presided at this trial, was also the juvenile court judge of Brown county.

The defendant cites *Adoption of Brown* (1958), 5 Wis. (2d) 428, 441, 92 N. W. (2d) 749, as authority for the fact that the county court in an adoption proceeding can order a disclosure of the agency records. Aside from the fact that an adoption proceeding concerning the child in question is totally different from a criminal case wherein the child is a complaining witness, the statute makes an exception for adoption proceedings.

Sec. 48.02 (2), Stats., provides:

" 'Court' means the juvenile court unless otherwise specified in the section, except that in ss. 48.81 to 48.97, relating to adoptions, 'court' means the county court."

In this instance it was procedurally necessary to obtain an order of the juvenile court before the records could be examined. Because Judge BYERS was also the juvenile judge does not change the fact that the application for inspection of the records had to be made to the juvenile court.[1] The ruling prohibiting an inspection of the agency records was not error. We do not infer that all or a part of the child welfare agency records of a complaining witness in a criminal case could never be obtained by a good and sufficient showing in an application to a juvenile court but that question is not before us in this action.

The final error assigned on this appeal is that it was error to deny a motion which would require the state to "turn over whatever records it may have concerning the mental condition of said minor."

[1] See *State v. Koopman* (1967), 34 Wis. (2d) 204, 148 N. W. (2d) 671.

Wisconsin does not have a pretrial discovery statute for criminal cases.

In 23 C. J. S., Criminal Law, p. 787, sec. 955 (1), the general rule on pretrial discovery in criminal cases is set forth as:

". . . No broad right of discovery exists, however, in criminal cases; the common law recognized no right of discovery in such cases, and it has been held that unless introduced by appropriate legislation, the doctrine of discovery is a complete and utter stranger to criminal procedure."

Several recent decisions of the United States supreme court have pronounced the rule that suppression of evidence by the prosecution violates the due-process clause of the Fourteenth amendment.

In *Brady v. Maryland* (1963), 373 U. S. 83, 86, 83 Sup. Ct. 1194, 10 L. Ed. (2d) 215, it is stated:

"We agree with the Court of Appeals that suppression of this confession was a violation of the Due Process Clause of the Fourteenth Amendment. The Court of Appeals relied in the main on two decisions from the Third Circuit Court of Appeals—*United States ex rel. Almeida v. Baldi,* 195 F. 2d 815, and *United States ex rel. Thompson v. Dye,* 221 F. 2d 763—which, we agree, state the correct constitutional rule.

"This ruling is an extension of *Mooney v. Holohan,* 294 U. S. 103, 112, where the Court ruled on what nondisclosure by a prosecutor violates due process:

" 'It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.'

"In *Pyle v. Kansas,* 317 U. S. 213, 215–216, we phrased the rule in broader terms:

" 'Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody. *Mooney v. Holohan,* 294 U. S. 103.'

"The Third Circuit in the *Baldi* case construed that statement in *Pyle v. Kansas* to mean that the 'suppression of evidence favorable' to the accused was itself sufficient to amount to a denial of due process. 195 F. 2d, at 820. In *Napue v. Illinois,* 360 U. S. 264, 269, we extended the test formulated in *Mooney v. Holohan* when we said: 'The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' And see *Alcorta v. Texas,* 355 U. S. 28; *Wilde v. Wyoming,* 362 U. S. 607. Cf. *Durley v. Mayo,* 351 U. S. 277, 285 (dissenting opinion).

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

A very recent case of the United States supreme court, *Giles v. Maryland* (1967), 386 U. S. 66, 87 Sup. Ct. 793, 17 L. Ed. (2d) 737, reports circumstances somewhat similar to those of this case. Upon the complaint of the prosecuting witness three defendants were convicted of rape and sentenced to death. The complaining witness gave statements to the police which could be viewed as inconsistent on the question of whether one of the three actually had sexual intercourse with her. The statements also cast some doubt upon the question of consent.[2]

It was alleged the state suppressed the following: One month prior to the events in question a probation worker

---

[2] The defendants were charged with rape wherein consent would be a defense. Our case differs in that in the charge of sexual intercourse with a child consent is immaterial.

in a juvenile court proceeding recommended probation because the complaining witness was beyond parental control. About five weeks after the arrest of the defendants but before trial the complaining witness attended a party where she had intercourse with two men; that night she took an overdose of pills and was hospitalized in a psychiatric ward as an attempted suicide; later she told a friend the two men had raped her. Her father filed formal charges against the two men in an adjoining county. Upon questioning by the police she refused to say she had been raped. She also told the officers she had sexual relations with numerous boys and men in the past two years. And finally she had been committed to a girls' school.

The inconsistent reports to the police were not considered by the Maryland court, but they had been made available to defense counsel.

The court, by a five to four majority, remanded the case to Maryland courts for further proceedings to determine whether a new trial should be granted.

A plurality of three members of the majority stated:

"The facts found by Judge Moorman do not include elements present in earlier decisions which determined that the suppression of evidence constituted the denial of due process of law. See *Mooney v. Holohan,* 294 U. S. 103; *Pyle v. Kansas,* 317 U. S. 213; *Alcorta v. Texas,* 355 U. S. 28; *Napue v. Illinois,* 360 U. S. 264; *Miller v. Pate, ante,* p. 1; compare *United States ex rel. Almeida v. Baldi,* 195 F. 2d 815; *United States ex rel. Thompson v. Dye,* 221 F. 2d 763; *Barbee v. Warden,* 331 F. 2d 842. Thus the case presents the broad questions whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial. We find, however, that it is unnecessary, and therefore inappropriate, to examine those questions. In *Napue v. Illinois, supra,* 360 U. S., at 269, we held that a conviction must fall under the Fourteenth Amendment when the prosecution 'although not soliciting

false evidence, allows it to go uncorrected when it appears,' even though the testimony may be relevant only to the credibility of a witness. We now have evidence before us, which neither Judge Moorman nor the Court of Appeals considered, which in our view justifies a remand to the Court of Appeals for its consideration whether that court should order an inquiry to determine whether such a situation arose at petitioners' trial. The evidence consists of two police reports, not part of the record, which came to our attention when the State at our request supplied the material considered by the trial judge in imposing sentence." *Giles v. Maryland, supra,* page 73.

*Giles* and the other United States supreme court decisions deal with suppression of evidence beneficial to the accused at the trial and are considered in postconviction proceedings. The ruling of those cases is that offered perjured testimony detrimental to the accused or suppressed testimony beneficial to him, within the standards of those cases, constitutes a lack of due process under the Fourteenth amendment.

We are not here dealing with suppression of evidence at the trial but with denial of motion for pretrial discovery.

In this instance and upon these facts we deem the trial court did not err in denying the motion for a pretrial discovery of "whatever records" the prosecution may have concerning the mental condition of the complaining witness.

The motion and the affidavit of the defendant do not in any way identify a record concerning the mental competence of the complaining witness nor does he allege that the district attorney did in fact have any record at all concerning her mental condition. The court was asked to take judicial notice of a statement made by the prosecutor in the case against the Green Bay officer in connection with sentencing after a plea of guilty to the effect

that the girl was seventeen years old and slightly re-tarded.[3]

As stated above, Judge BYERS heard all of the proceed-ings involving the Green Bay officer and the preliminary examination in this case. Marcia testified extensively in the preliminary. At the time of trial she was eighteen years old and had passed to the senior year of her high school. He was firmly of the opinion that she was com-petent to testify. Upon these facts we deem the defend-ant has not shown sufficient good cause for discovery and that this fact, combined with the judicial knowledge of the entire factual situation available to Judge BYERS, compel our conclusion that his denial did not constitute an abuse of judicial discretion.

Further, Wisconsin does not recognize a right in de-fendant to a pretrial discovery of the prosecution's evi-dence.[4] If we are to adopt a pretrial discovery procedure in criminal cases in this state we deem it would be best done by a rule of court or by legislative action rather than on a case to case basis by the court.

If the claim of the defendant is that his motion for discovery does not go to the competency of the witness but to a suppression of evidence beneficial to his defense, we find no prejudicial error in the court's denial of his pretrial discovery motion. It is nowhere suggested that

---

[3] The state cites *State v. LaPean* (1945), 247 Wis. 302, 19 N. W. (2d) 289, for the rule that a court cannot take judicial notice of its records. In the recent case of *Venisek v. Draski*, ante, p. 38, 150 N. W. (2d) 347, we held that a court could take judicial notice of its own records upon request. *Venisek* overrules *LaPean* insofar as they are inconsistent.

[4] *Santry v. State* (1886), 67 Wis. 65, 30 N. W. 226; *State ex rel. Spencer v. Freedy* (1929), 198 Wis. 388, 392, 223 N. W. 861; *State ex rel. Schroeder v. Page* (1932), 206 Wis. 611, 240 N. W. 173; *Steensland v. Hoppmann* (1934), 213 Wis. 593, 252 N. W. 146; *State v. Herman* (1935), 219 Wis. 267, 262 N. W. 718; *State ex rel. Byrne v. Circuit Court* (1962), 16 Wis. (2d) 197, 198, 114 N. W. (2d) 114.

Marcia ever stated that she did not have sexual intercourse with the defendant at the time and place stated in the information. This is not a case of the state knowingly offering perjured testimony and suppressing the evidence that would establish or tend to establish perjury. The claim that she had accused two other men of having sexual intercourse with her and later admitted the statements were false goes not to prove or disprove the specific act in question [5] in this case but goes to the credibility of Marcia as a witness. At the trial, defense counsel was permitted wide latitude in his cross-examination of Marcia. She did on cross-examination, in the presence of the jury, admit that she had made these false accusations, later withdrew them, and stated she originally made them because she was angry with the two individuals at the time the statements were made. The trial judge specifically instructed the jury to consider the evidence of Marcia's false accusations in determining her credibility as a witness. We are unable to find that the defendant was denied any fundamental right or otherwise tried unfairly by virtue of being denied access to the prosecutor's files.

Upon the entire record we find no prejudicial error.

*By the Court.*—Judgment affirmed.

---

[5] Consent is not an issue here as it was in *Giles v. Maryland, supra.*