STATE, Respondent, v. WATKINS, Appellant.

*No. State 18.  Argued October 2, 1968.—Decided October 29, 1968.*
(Also reported in 162 N. W. 2d 48.)

For the appellant there was a brief and oral argument by *John M. Wiley* of Madison.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

WILKIE, J.   Six issues are raised on this appeal.

(1) Does a repeater allegation against one charged with a misdemeanor change the charge to a felony for purposes of requiring a preliminary hearing?

(2) Was the officer (principal prosecution witness) improperly instructed by the deputy district attorney with regard to answering the questions of defense counsel?

(3) Does a criminal defendant have a constitutional right to pretrial discovery?

(4) Was the correct procedure used by the trial court in applying the provisions of the repeater act?

(5) Did the state fail to meet its burden of proof as to intent?

(6) Is appellant entitled to a new trial in the interest of justice?

1. *Right to preliminary examination.*   A preliminary examination is a statutory, not a constitutional right. The Wisconsin statutes (sec. 955.18) provide for a preliminary hearing only in felony cases. Before the trial court it was argued that because of the Repeater Act the misdemeanor became a felony and thus appellant was entitled to a preliminary. But as this court stated in *Harms v. State:* [1]

"The habitual criminality statute increases the penalty for a particular misdemeanor or felony involved, but in no way changes the nature of the crime."

We must conclude that in this case the defendant was not, either as a matter of constitutional or statutory right, entitled to a preliminary examination.

---

[1] (1967), 36 Wis. 2d 282, 153 N. W. 2d 78.

2. *Defense questioning of prosecution witness.* On the night before the trial, at about 8 p. m., the defense attorney sought out Officer Cady, the principal prosecution witness. The two discussed the case for approximately ten minutes, at which point Cady called Mr. Mebane, the deputy district attorney. At the trial the following exchange took place between defense counsel and Cady.

"*Q.* Were you told, then, not to answer any more questions? *A.* My instructions over the phone were not to answer any direct questions, to tell you that the information that you needed was on the indictment that was filed with the court, and that *he told me that I wasn't required to answer your questions, sir.*" (Emphasis added.)

Focusing on the entire record to see how Officer Cady's testimony should be characterized, this court concludes that the deputy district attorney did no more than tell an unwilling witness that he was under no obligation to answer defense counsel's questions. Officer Cady was not anxious to speak to defense counsel. By his own testimony he was apprehensive during his discussions with that attorney and it is clear that Officer Cady called the deputy district attorney to determine whether or not he was required to answer the questions posed by defense counsel.

The deputy district attorney's instructions were in accordance with the well-settled law that:

"Accused and his counsel have the right to interview witnesses before the trial; and the state has no right to deny them access to a witness material to the defense, but a witness cannot be compelled to submit to such interview, . . . ." [2]

Also in *Byrnes v. United States* [3] it was stated that:

---

[2] 23 C. J. S., *Criminal Law*, pp. 817, 818, sec. 958.

[3] (9th Cir. 1964), 327 Fed. 2d 825, 832, certiorari denied, 377 U. S. 970, 84 Sup. Ct. 1652, 12 L. Ed. 2d 739. *See also Corbett v. People* (1963), 153 Colo. 457, 387 Pac. 2d 409, rehearing denied, 377 U. S. 939, 84 Sup. Ct. 1346, 12 L. Ed. 2d 302; *Barton v. State* (Fla. 1966), 193 So. 2d 618; *State v. Lampp* (Fla. 1963), 155 So. 2d 10; *Kardy v. Shook* (1965), 237 Md. 524, 207 Atl. 2d 83.

". . . any defendant has the right to attempt to interview any witnesses he desires. It is also true that any witness has the right to refuse to be interviewed, if he so desires (and is not under or subject to legal process). . . ."

Appellant argues that the deputy district attorney's instructions to Officer Cady should be characterized by this court as an order not to answer defense counsel's questions. He urges that such an order violates a defendant's right to due process of law and cites *Gregory v. United States* [4] and *Coppolino v. Helpern* [5] in support of his position.

In *Gregory* the court was presented with a situation where the prosecutor had advised the state's witnesses not to talk to anyone unless the prosecutor was present. It should be noted that 18 U. S. C. 3432 applied to this case. That statute requires that in a capital case the defendant be furnished a list of the names and addresses of the witnesses to be called by the government. The purpose of this list is to assist defense counsel in preparing the defense by interviewing the witnesses.

The court stated that:

". . . Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which, not only the statute, but elemental fairness and due process required that he have. . . .

". . . we know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses except in his presence. . . . In fact, Canon 39 of the Canons of Professional Ethics makes explicit the propriety of such conduct: 'A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party.' Canon 10 of the Code of Trial Conduct of the American College of Trial Lawyers is an almost verbatim provision.

". . . .

---

[4] (D. C. Cir. 1966), 369 Fed. 2d 185.
[5] (D. C. N. Y. 1967), 266 Fed. Supp. 930.

"A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined. The current tendency in the criminal law is in the direction of discovery of the facts before trial and elimination of surprise at trial. A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case. Information favorable to the defense must be made available to the defense. Brady v. State of Maryland, 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Reversals of convictions for suppression of such evidence, and even for mere failure to disclose, have become commonplace. It is not suggested here that there was any direct suppression of evidence. But there was unquestionably a suppression of the means by which the defense could obtain evidence. . . ." [6]

*Coppolino v. Helpern* [7] was an action for injunctive relief and damages brought under the Civil Rights Act, 42 USCA 1983. Briefly, the essential facts are these: The chief medical examiner of the city of New York, Dr. Helpern, testified as to the cause of death of plaintiff's wife. The doctor's opinion was based on his own examinations *and* those conducted by a Dr. Umberger. Defense counsel attempted to interview the subordinate, Dr. Umberger, but Dr. Helpern refused to permit it. Thus the court characterized the issue as one of Dr. Helpern's interference with defense counsel's attempt to interview a willing witness.

"The specific right for which plaintiff claims federal constitutional protection is the right of a defendant in a criminal case to gather evidence which may be useful to him in his defense, including the right to interview willing witnesses, free from state interference. [Under Florida law plaintiff is entitled to a list of witnesses. F. S. A. 906.29.] This right, says plaintiff, is protected by the Sixth Amendment to the Constitution of the United States which guarantees him the right to effective assistance of counsel and the due process clause of

---

[6] *Gregory v. United States, supra,* footnote 4, at pages 188, 189.
[7] *Supra,* footnote 5.

the Fourteenth Amendment which guarantees him a fair trial." [8]

The court held that the interference was improper. The court stated:

"We merely say that, as to interviewing a prospective prosecution witness, our constitutional notions of fair play and due process dictate that defense counsel be free from obstruction, whether it come from the prosecutor in the case or from a state official of another state acting under color of law.

"A trial is a search for the truth. This is no less true in a criminal matter than in a civil matter. A trial is not a sporting game in which one side tries to outwit the other. Under the law of Florida a defendant in a criminal case is entitled to a list of witnesses. It appears from the facts in this case that Dr. Umberger will be called as a witness by the prosecution in the Florida case. Dr. Helpern has already appeared in Florida as a witness and is willing for Dr. Umberger to appear pursuant to subpoena or court order. A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal case without the consent of opposing counsel. Canons of Professional Ethics, ABA, Canon 39. . . ." [9]

Both of these cases present facts that are clearly distinguishable from those in the instant case. In *Gregory*, the prosecutor advised witnesses not to talk to anyone except in his presence. In *Coppolino*, a witness who was willing to be interviewed was ordered not to be interviewed by defense counsel. There were no such instructions here.

3. *No constitutional right to pretrial discovery in criminal case.* Counsel urges this court to recognize a constitutional right to pretrial discovery in a criminal case. In *State v. Miller* [10] we said:

"Further, Wisconsin does not recognize a right in defendant to a pretrial discovery of the prosecution's evidence. If we are to adopt a pretrial discovery procedure

---

[8] *Coppolino v. Helpern, supra,* footnote 5, at page 933.
[9] *Id.* at page 935.
[10] (1967), 35 Wis. 2d 454, 151 N. W. 2d 157.

in criminal cases in this state we deem it would be best done by a rule of court or by legislative action rather than on a case to case basis by the court." [11]

We have nothing to add.

4. *Procedure used in applying repeater statute.* Appellant challenges the procedure used by the trial court in applying the repeater statute. Appellant argues that the trial court improperly required the defendant to plead to the Repeater Act. However, the record reveals that, in effect, the trial court merely required the defendant to admit or deny the allegation in the complaint that defendant had previously been convicted of a felony. The court pointed out that if the defendant denied the allegation the state would have to prove it during the trial. The defendant then admitted the truth of the allegation of a previous felony conviction. This procedure did not require the appellant to "plead guilty" as that phrase is generally understood—it was simply an admission that on a particular date appellant had been convicted of a felony.

Appellant further argues that if the trial court has the power to require the defendant to plead under the repeater statute it erred prejudicially by accepting defendant's unequivocal and unknowledgeable plea. Because it is clear that the trial court could not and did not require defendant to plead guilty to being a repeater and merly required an admission or a denial as to a past felony conviction, this argument is without merit. A repeater allegation is not a crime. [12]

Clearly the procedure followed by the trial court was in accordance with the provisions of sec. 959.12, Stats.,

[11] *Id.* at page 478. *Affirmed* in *Ramer v. State,* ante, p. 79, 161 N. W. 2d 209.

[12] *Dahlgren v. State* (1916), 163 Wis. 141, 157 N. W. 531; *Watson v. State* (1926), 190 Wis. 245, 247, 208 N. W. 897; *Mundon v. State* (1928), 196 Wis. 469, 471, 220 N. W. 650; *State v. Miller* (1941), 239 Wis. 334, 1 N. W. 2d 178; *State v. Sullivan* (1942), 241 Wis. 276, 5 N. W. 2d 798.

and was designed to protect the interests of the defendant. Sec. 959.12 provides in part that:

"Whenever a person charged with a crime will be a repeater as defined in s. 939.62 if convicted, any prior convictions may be alleged in the complaint. . . . If such prior convictions are admitted by the defendant or proved by the state he shall be subject to be sentenced under s. 939.62 . . . ."

The rationale for this procedure was explained in *Howard v. State:* [13]

". . . This provision [allowing the defendant to admit his prior conviction] carries with it, necessarily, the implication that under legal procedure no proof on the subject is necessary or need be required. This provision also suggests that the legislature intended to give the accused an opportunity to avail himself of the right afforded by the law which, except in certain cases, excludes evidence of other offenses from being submitted to the jury as proof of the guilt of the accused of the specific offense for which he is on trial. . . . It is therefore a reasonable inference from the legislative regulation giving the accused the privilege of admitting such former sentences on the trial that it was intended that evidence thereof should not be received after such admission, and that there was no issue respecting such allegations for submission to the jury." [14]

Thus the trial court, by giving the defendant an opportunity to admit the prior convictions, gave him the opportunity to keep evidence of prior crimes from the jury.

5. *Proof of intent.* Appellant argues that the record is devoid of any proof of intent on the part of the de-

---

[13] (1909), 139 Wis. 529, 121 N. W. 133. *See also Meyers v. State* (1927), 193 Wis. 126, 213 N. W. 645; *Brozosky v. State* (1928), 197 Wis. 446, 222 N. W. 311; *State v. Adams* (1950), 257 Wis. 433, 43 N. W. 2d 446.

[14] *Howard v. State, supra,* footnote 13, at page 533.

fendant to commit the crime of battery, sec. 940.20, Stats., and therefore *State v. McCarter* [15] requires reversal.

However, the jury chose to believe Officer Cady's testimony that he saw the appellant raise his arm and throw the tools against the car and through the window, as contrasted with the defendant's testimony that the tools were dropped out of fright. This the jury had a right to do and in so doing it selected evidence which provided a clear basis for the jury to conclude that the appellant threw the tools at the officer with the required intent. [16]

6. *No new trial in the interest of justice.* Appellant argues that the combination of issues presented on this · appeal requires this court to grant a new trial in the interest of justice. We find no merit in this contention.

*By the Court.*—Judgment affirmed.

---

[15] (1967), 36 Wis. 2d 608, 153 N. W. 2d 527.

[16] *State v. McCarter, supra,* footnote 15; *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354; *State v. Vinson* (1955), 269 Wis. 305, 309e, 68 N. W. 2d 712, 70 N. W. 2d 1.