**Dennis Elwood WOODHULL, Petitioner,**

v.

**Elmer CADY, Respondent.**

**Civ. A. No. 70–C–282.**

United States District Court,
E. D. Wisconsin.

Dec. 1, 1971.

———◆———

L. William Staudenmaier, and William J. Mulligan, Milwaukee, Wis., for petitioner.

E. Michael McCann, Dist. Atty., and Joseph E. Tesch, Asst. Dist. Atty., and Robert W. Warren, Atty. Gen., and William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

OPINION AND ORDER

REYNOLDS, Chief Judge.

This is an application, pursuant to Title 28 U.S.C. § 2241, for writ of habeas corpus. On March 8, 1968, petitioner was convicted in the Wisconsin Circuit Court for Milwaukee County of third degree murder, Wis.Stats. § 940.03. Three days later he was sentenced to an indeterminate term of not more than twenty-five years. He is presently incarcerated pursuant to that conviction and sentence.

In support of this application, four grounds are alleged: (1) that pretrial

motions for discovery were denied by the trial court, (2) that compulsory process for obtaining witnesses at the preliminary examination was denied, (3) that the conviction was based on insufficient evidence, and (4) that effective assistance of counsel was denied. Petitioner by way of appeal and then by application for writ of habeas corpus has unsuccessfully presented these arguments to the Wisconsin Supreme Court. Woodhull v. State, 43 Wis.2d 202, 168 N.W.2d 281 (1969); State ex rel. Woodhull v. Cady, unpublished opinion, Wisconsin Supreme Court Case No. 70–62 (March 16, 1970). I concur and find that the application should be dismissed.

The facts in this case relevant to the issues at hand are as follows, but a detailed recitation of the facts in this matter may be found in the published decision of the Wisconsin Supreme Court hereinbefore cited.

On July 10, 1967, a preliminary examination was held in the Milwaukee County Court. At that time petitioner's counsel requested that Wendell Weidelmann [this gentleman's name is spelled a number of ways in the record; I shall use the spelling of the trial court reporter], a prisoner incarcerated at the state prison, be brought down to testify. The following exchange then took place:

"THE COURT: Assuming this person, Wedemin—what will he testify to if called?

"MR. BRADY: Your Honor, my main reason for conducting the preliminary is to find out how he would testify, but I am reliably advised that his testimony will refute the key witness for the state, the only true witness that the state has in this case that connects this defendant up with the crime charged.

"THE COURT: That isn't a sufficient reason for this Court directing that Wedemin be brought back from Waupun.

"MR. BRADY: Well, Your Honor, he would place the state witness in a precarious position as far as his testimony. Before this his testimony was completely unrefuted.

"THE COURT: Unless you can indicate what this witness, Wedemin, will testify to the Court isn't going to order his attendance here.

"MR. BRADY: Your Honor, I object to laying out our case, delivering it to the district attorney before it's heard to the Court.

"THE COURT: All right, then you can have the Circuit Court order him produced. Proceed."

The court then heard the testimony of Arthur Wild, Jr., after which the court asked:

" * * * Mr. Brady, do you have any witnesses?

"MR. BRADY: We do, Your Honor.

"THE COURT: All right, call them.

"MR. BRADY: I would have difficulty calling them, Your Honor. As you well know I have advised you the witness or witnesses are in Waupun.

"THE COURT: All right, they may be interrogated by you there, there is no question about that, in the presentation of the case. You will be reimbursed by the Circuit Court for your trip to Waupun if you believe it's necessary to interrogate them there. If you do go to interrogate them the warden of the penetentiary will certainly give you every opportunity to interrogate them and certainly if the Circuit Court is of the opinion that those witnesses, after your interrogation of them are necessary to your defense, will no doubt order their appearance at the time of the trial, but this Court cannot so order and will not do so, sitting as magistrate, * *."

The petitioner was then bound over for trial.

On November 21, 1967, petitioner's attorney filed a motion for discovery seeking (1) any statements by witnesses which reflected favorably on defendant, (2) state crime laboratory reports, (3)

names and addresses of the state's witnesses, (4) petitioner's clothing and that of the victim, (5) photos of the crime scene and autopsy, (6) the criminal records of Arthur Wild and Thomas Smith, and (7) an order for taking depositions of nine named persons, including Messrs. Wild and Smith. On December 20 the court denied the first, third, and seventh requests; ruled that the state had satisfied any obligation it had with regard to the second, fourth, and fifth requests; and denied as premature the sixth request. On February 21, 1968, these discovery motions were renewed and again denied. Finally, at a pretrial conference on March 1, 1968, these motions were renewed and denied once more.

Petitioner was tried March 4–8, 1968. At that trial Wendell Weidelmann, Arthur Wild, and Thomas Smith each testified. The latter two testified to a conversation they had with petitioner while they were all incarcerated in the Milwaukee County jail, a conversation during which petitioner confessed and described his crime. Petitioner's conviction was predicated on this testimony. After each of these two men had been directly examined, the prosecutor gave petitioner's counsel their prior statements and criminal records. Wendell Weidelmann testified for the defense.

■ Each of petitioner's contentions is without merit. The trial court's denial of petitioner's discovery motions was permissible under constitutional law. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), holds that the state may not suppress at trial pertinent evidence going to the innocence of the accused or measure of punishment to be dealt him, and does not write pretrial discovery into the Constitution. United States v. Conder, 423 F.2d 904, 911 (6th Cir. 1970); Hemphill v. United States, 392 F.2d 45, 48 (8th Cir. 1968). Indeed there is substantial argument that the Constitution would in fact prohibit state adoption of broad mutual discovery rules in criminal matters. Williams v. Florida, 399 U.S. 78, 114–116, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (Black and Douglas, JJ., dissenting). Moreover, there is no allegation that there was in fact any "favorable" evidence suppressed by the state, much less that it was of such materiality that prejudice was caused. United States ex rel. Durso v. Pate, 426 F.2d 1083, 1089–90 (7th Cir. 1970); United States v. Acarino, 408 F.2d 512, 515 (2d Cir. 1969). In his brief petitioner particularly objects to the denial of an order for the depositions of Smith and Wild, implying that they were in the state's custody prior to trial and, thus, that the state was preventing any questioning. E. g., cf. State v. Watkins, 40 Wis.2d 398, 162 N.W.2d 48 (1968). I find nothing in the record to the effect that these two men were incarcerated when petitioner made his motions, but even if such were the case, I cannot, as petitioner requests, take judicial notice that an attorney cannot without a court order question incarcerated witnesses at the state prison or county jails when the state maintains, both by brief and affidavit, that such questioning is allowed and when the county judge at the preliminary examination similarly indicated that questioning was permitted. Further, it should be noted that petitioner's counsel was able to examine Mr. Wild, the most damaging prosecution witness, twice before trial—at a sanity hearing and at the preliminary examination.

■ Similarly, the trial court's refusal to order the appearance of Mr. Weidelmann at the preliminary examination was within constitutional bounds. In United States v. Conder, supra, 423 F.2d at 909, it was held that in a federal criminal trial it was within the trial judge's discretion to deny defendant's requests for writs of habeas corpus ad testificandum for defense witnesses *at trial* when the defendant maintained that those witnesses were necessary to his defense for alibi and impeachment purposes. "The mere allegation that the witnesses would be necessary for 'alibi as well as impeachment purposes' is the most general of statements and does not constitute * * * sufficient averment

of facts * * *." In the instant matter, petitioner had no constitutional right to a preliminary examination, Burbey v. Burke, 295 F.Supp. 1045 (E.D. Wis.1969), and, in any case, was not prejudiced by the hearing judge's denial as Weidelmann subsequently testified at trial. Cf. Odell v. Burke, 281 F.2d 782 (7th Cir. 1960).

Petitioner's third ground—insufficiency of the evidence—was well answered by the Wisconsin Supreme Court in Woodhull v. State, supra, 43 Wis.2d at 207–210, 168 N.W.2d 281. I concur in their judgment. Nor has the fourth ground merit. The allegation that petitioner lacked effective assistance of counsel is twofold.[1] First, it is argued that because counsel could not prevail in his motions for pretrial discovery, he was not allowed to properly prepare for trial. The test, however, for effective assistance of counsel is how well he serves his client within the existing legal framework, not how well he might have served his client could he have rewritten the Constitution. Second, petitioner alleges that because his counsel failed to challenge the petitioner's confession as involuntary and subject to a Jackson v. Denno[2] hearing, he was ineffective. It is not alleged that at the time of the confession Wild and Smith were in the employ of the state, nor that the confession was in fact involuntary. But it is not necessary for me to pass on the *Jackson* issue or whether prejudice resulted,[3] for even assuming that the failure to request a *Jackson* hearing was a mistake, it was not such a glaring error as to suggest that the sound counsel, which the record demonstrates was provided, was thereby rendered constitutionally defective.

1. Petitioner's counsel was privately retained by a relative. However, this has not been argued, and for purposes of the following discussion, it is assumed that there is no difference constitutionally between state-provided and private counsel.

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1968).

In accordance with the above conclusions,

It is ordered that the petition of Dennis Elwood Woodhull for a writ of habeas corpus be and it hereby is dismissed.

3. Note the holding of Smiley v. State of California, 442 F.2d 1026 (9th Cir. 1971), that mere failure to object at trial to admission of a confession does not prevent the assertion of coercion by way of habeas corpus.