**UNITED STATES of America, Appellee,**

v.

**Ambrose Ervin LITTLEBEAR, Appellant.**

**No. 75-1291.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1975.

Decided March 4, 1976.

William W. Binek, Grand Forks, N. D., for appellant.

Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D.; Harold O. Bullis, U. S. Atty., Fargo, N. D., filed brief for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

TALBOT SMITH, Senior District Judge.

Appellant Ambrose Ervin Littlebear (hereafter defendant), an American Indian, was convicted by a jury in the District of North Dakota of the second degree murder[1] of his half brother, Francis Rattlingtail. We affirm.

The shooting occurred on the Devils Lake Sioux Indian Reservation at the mobile home of Lena Dene, the mother of the defendant and of the decedent, who was defendant's half brother. Commencing on December 18, the day before the murder, a group of friends and relatives had gathered in Mrs. Dene's trailer home. There had been extensive drinking of beer, vodka, and whiskey, among those present. Several of the participants had "passed out." Defendant left the group about two in the morning, staggering, having difficulty in speaking, and apparently drunk.

He returned the next day, December 19, about five o'clock in the afternoon. In addition to the group gathered on the previous day, Francis Rattlingtail, the decedent, was also present, as well as Julius Schafer, a furnace repairman, who was there in response to a request that he fix the furnace. According to Mr. Schafer, "there was some drinking going on there" during the time he was present, although as far as he himself was concerned, he testified that he had nothing to drink and was apparently anxious only to finish his work and leave the gathering. After the defendant's return to the trailer he had a discussion with his mother concerning money, but she was either unable or unwilling to supply the amount requested. The decedent, who had been working in Aberdeen, South Dakota and had stopped by en route to see his family in Bemidji, Minnesota, told the defendant to listen to his mother, following which a fist fight ensued between the two. According to the testimony of Mr. Schafer, at the conclusion of the fight the defendant left the trailer. His (Schafer's) testimony continues:

Q After Ambrose [defendant] got up what if anything happened? Did Ambrose leave immediately or did he talk to anyone?

A Well, he said something to Mrs. Dene and turned around and looked at Francis [the decedent] and said, "You're dead. I'm going home to get my rifle and shoot you."[2]

Q Then what did he do?

A Then he turned around and left as far as I know. I didn't believe it was going to happen. I was going to hurry and get the furnace fixed and get out of there.

The defendant returned in about five minutes with a rifle. Mr. Schafer's testimony continues as follows:

Q Now what happened then?

A I was working on the furnace and I heard something there, a sound, made me look up and he was standing there with the rifle pointing it.

Q You say you saw him standing there with the rifle?

A Yes.

Q What did he do with the rifle then?

A Pointed at Rattling Tail and pulled the trigger.

Q Did he say anything before he pulled the trigger?

A I think he said, "Now what have you got to say."

The defendant, indicted for first degree murder, was convicted by the jury of murder in the second degree.

The testimony as to defendant's intoxication, or degree thereof, varied from witness to witness. To Mr. Schafer there was nothing unusual in the way he was acting. Defendant's mother, on the other hand, testified that he was drunk. Others testifying expressed varying opinions relative to defendant's speech and conduct.

█ In this state of the evidence a jury question was presented as to defendant's intoxication or degree thereof. Upon prop-

---

1. 18 U.S.C. § 1111 (1948); 18 U.S.C. § 1153 (1949).

2. Corroborated by testimony of Mrs. Dene, "I'm going to kill you." (Footnote ours.)

er instructions,[3] the second degree verdict was returned. We find no error in the court's denial of defendant's motion for acquittal upon the evidence adduced.

■■■ The defendant also objects to the introduction into evidence of several photographs of decedent taken as he was lying on the floor of the trailer, arguing that they were inflammatory, prejudicial and without probative value. It is well settled that the admission into evidence of such photographs is addressed to the sound discretion of the trial judge. *United States v. Delay*, 500 F.2d 1360, 1366 (8th Cir. 1974). The photographs admitted went to the corpus delicti and could under no circumstances be deemed so inflammatory as to "lead the jury to act upon outrage instead of competent proof."[4] There was no abuse of discretion in the admission of these photographs.

The defendant's most serious complaint concerns the court's giving of the government's instruction as to intent. The instruction given, taken almost verbatim from Devitt and Blackmar's Federal Jury Practice and Instructions,[5] stated as follows:

Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operation of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider statements made and acts [sic] done or admitted [sic] by the defendant and all other facts and circumstances in evidence which indicate a state of mind.

It is ordinarily reasonable to infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

The second paragraph of the above instruction has received much judicial attention, most of it adverse,[6] and was recently discussed by us in detail in *United States v. Diggs*, 527 F.2d 509 (8th Cir. 1975). We feel that we can add little to the comprehensive analysis there contained, the concluding paragraph of which is particularly pertinent hereto:

Had the government made a strong case against the defendant, we would have been inclined to hold that the giving of Instruction No. 13 was not prejudicially erroneous in view of other instructions of the district court. As has been seen, however, we do not consider that the government made even a submissible case, let alone a strong one. And even where the government makes a strong case, the giving of an instruction containing the language of the second paragraph of Instruction No. 13 is a dangerous practice. Further, it may be doubted that in any event the questioned language, to the extent that it has logical validity, really tells an intelligent jury anything that it does not know already. *See United States v. Barash*, 365 F.2d 395, 402 (2nd Cir. 1966).

Id. at 515.

■■■ Although we agree that the giving of the instruction as to the inference "that a person intends the natural and probable consequences of acts knowingly done . . . ." is a "dangerous practice" and is to be employed, if at all, with caution, we hold that the giving of the instruction in the case before us was not prejudicial error. The government's proofs were overwhelming. The jury was carefully instructed on the presumption of defendant's innocence and the burden on the government to prove

---

3. In *Goings v. United States*, 377 F.2d 753, 757 n.3 (8th Cir. 1967) we approved the instruction found in W. Mathes and E. Devitt, Federal Jury Practice and Instructions, § 10.16 at 139 (1st ed.1965), on voluntary intoxication, to which the instruction given substantially conforms. *See also United States v. Jewett*, 438 F.2d 495, 499 (8th Cir.), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 117 (1971) and *Kane v. United States*, 399 F.2d 730, 736 (9th Cir. 1968),

cert. denied, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969) as to specific intent.

4. *United States v. Delay, supra*, at 1366.

5. *See* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions (2d ed.1970), § 13.06 at 276–278, together with discussion thereof.

6. *See* note 5, *supra*.

the defendant's guilt beyond a reasonable doubt as to each essential element of the crime charged, as well as other matters to be considered.

We have reviewed the instructions given [7] as a whole with care and we cannot conclude that the jury was misled in any way as to the essential elements of the crime committed or the proofs thereof. *United States v. Fallen*, 498 F.2d 172, 177 (8th Cir. 1974). There is no prejudicial error on this record.

Affirmed.

---

**7.** We note that defendant's objections to the court's refusal to give his proposed instructions numbers 11 and 21, and to its giving of govern- ment's requested instruction number 18 have been withdrawn.