LOFTON, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–015–CR. Submitted on briefs March 8, 1978.—*
*Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 576.)

474

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Mark Lukoff,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

BEILFUSS, C. J.  The defendant contends that the complaint did not state sufficient facts to support the charge of first degree murder; that sufficient evidence was not presented at the preliminary hearing to support a bindover or to support the information charging first degree murder; and that at the close of trial testimony the county court should have granted the motion to dismiss on the ground that sufficient evidence had not been presented on the charge of first degree murder.  In addition, the defendant argues that the trial court should have granted a mistrial because of statements made by the prosecutor during the rebuttal stage of his closing argument; that the trial court erred in refusing to instruct the jury on the lesser included crime of homicide by negligent use of a weapon; and that she is entitled to a new trial in the interest of justice.

The defendant argues that the complaint is insufficient because it fails to allege facts showing that she shot George White with the intent to kill.

The two elements of first degree murder are that the defendant intended to kill the victim and that the defendant caused the death of the victim.  Sec. 940.01,

Stats.[1] Gloria Lofton does not challenge the sufficiency of the complaint as to the second element; she only argues that it failed to show an intent to kill.

City of Beloit Police Detective David Grenke alleges in the complaint, in part:

"That on or about December 29, 1974, he was called to the Jossie White residence at 1802 Arbor Drive, Beloit, Wisconsin, in reference to a disturbance; that upon his arrival at the White residence, this officer was taken to a nearby backyard; that they thereupon saw an individual with what appeared to be a bullet hole in his chest and blood on his shirt and that said individual was rushed to the Beloit Hospital; that according to information from the Coroner of Rock County and also the records of Beloit Hospital, Mr. White died within minutes of his arrival;

"That this affiant hereupon commenced an extensive investigation of possible witnesses to the incident at the White residence; that this affiant has interviewed one of the witnesses to the disturbance who indicated that the defendant, Gloria Lofton, and her sister were engaged in an argument with the deceased and that said witness heard gun fire and saw the flash of a gun between the three persons heretofore mentioned, namely Gloria Lofton, her sister and the deceased;

"That on January 3, 1975, this affiant interviewed another witness to said incident who indicated to this affiant that there was an argument between the defendant, the deceased and the defendant's sister; that said witness further indicated that immediately after that incident, in the presence of others, the defendant indicated that she was sorry and that she didn't mean to shoot the deceased."

---

[1] "940.01 *First-degree murder.* (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

The standards by which this court tests the sufficiency of the complaint were reviewed in *State v. Elson*, 60 Wis.2d 54, 57–58, 208 N.W.2d 363 (1973):

"By statute, a criminal '. . . complaint is a written statement of the essential facts constituting the offense charged,' sec. 968.01, Stats., and in the case of *State ex rel. Evanow v. Seraphim* (1968), 40 Wis.2d 223, 161 N.W.2d 369, this court gave common sense meaning to the statute in that the complaint must answer certain fundamental questions. At page 230, it is stated: " 'What is the charge? Who is charged? When and Where is the offense alleged to have taken place? Why is this particular person being charged? [and] . . . "Who says so?" '

"The sum of the answers to the above six questions as contained in the complaint '. . . must meet the test of "probable cause." ' State ex rel. *Cullen v. Ceci* (1970), 45 Wis.2d 432, 443, 173 N.W.2d 175; *State v. Becker* (1971), 51 Wis.2d 659, 188 N.W.2d 449.

" 'A complaint is sufficient if a fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious. *State ex rel. Cullen v. Ceci, supra; Jaben v. United States* (1965), 381 U. S. 214, 224, 85 Sup. Ct. 1365, 14 L. Ed.2d 345.' *State v. Becker, supra*, at page 663.

"In testing the complaint, both facts and the reasonable inferences arising from the facts may be looked to. " 'A complaint must state facts sufficient in themselves or admitting to reasonable inferences which are sufficient to establish probable cause.' *State v. Becker, supra*, at page 662."

Applying these standards, we find the complaint alleges sufficient facts to show an intent to kill. In *Garcia v. State*, 73 Wis.2d 174, 183, 242 N.W.2d 919 (1976), we said:

"There is the presumption that one intends the natural and probable consequences of his acts. *State v. Cydzik* (1973), 60 Wis.2d 683, 697, 211 N.W.2d 421. In cases

of first-degree murder, the fact that the defendant shot his victim in a vital part raises a presumption of intent. *Smith v. State* (1975), 69 Wis.2d 297, 303, 304, 230 N.W.2d 858."

In the instant complaint, Officer Grenke stated that he observed a bullet hole in the victim's chest and the victim was rushed to the hospital where he died within minutes of his arrival. As in *Garcia,* the fact that George White was shot in a vital part of his body raises a presumption of intent.

The defendant contends that the evidence presented at the preliminary hearing was insufficient to support a bindover because the evidence did not support a finding of probable cause that a felony had been committed and that she committed it. She argues that the preliminary hearing only shows that a gun was fired from the area in which she was standing, and that she was never linked with the gunshot.

The standards by which this court reviews the evidence at a preliminary examination to determine whether it was sufficient to support the finding of the court were stated in *State v. Olson,* 75 Wis.2d 575, 584, 250 N.W.2d 12 (1977):

"The defendant contends that the evidence adduced at the preliminary hearing was insufficient to support a bindover for trial. The purpose of a preliminary hearing is to determine if there is probable cause, a reasonable probability, to believe a felony has been committed by the defendant.

"The scope of appellate review of the sufficiency of the evidence adduced at the preliminary hearing is set forth in *State ex rel. Hussong v. Froelich,* 62 Wis.2d 577, 583, 215 N.W.2d 390 (1974):

" 'It is well established in this state that the evidence of a preliminary hearing need not be sufficient to prove the charge against the defendant beyond a reasonable doubt. The reviewing court can examine the evidence

only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence.' "

Applying these standards to the evidence presented at the preliminary examination we conclude that the evidence was sufficient to support the finding of probable cause that a felony had been committed by the defendant.

Beloit Police Detective David Grenke testified that shortly after 4 a.m., on December 29, 1974, while responding to a complaint regarding an altercation at 1802 Arbor Drive, he found George White approximately fifty or sixty yards from that property. Grenke testified that White had what appeared to be a bullet hole to the left side of his chest; he appeared to be very near death; and he was unconscious. Grenke said that a few days later he interviewed Philip Berg who gave him a Valentine candy box containing a .25 caliber Titan automatic pistol wrapped in newspaper, a clip and six rounds of ammunition. Grenke also testified to receiving the .25 caliber bullet that was removed from White's body.

White's death was established by the introduction of the death certificate.

James Robert Gladney testified that on the morning of the shooting, the victim, the defendant and Irene Lofton, who was the defendant's sister, were involved in a series of arguments during which George White shoved the defendant and her sister up against the wall inside the residence at 1802 Arbor Drive. Eventually everyone went outside and during one argument the defendant and Irene were standing by George White, all about a step away from each other. Gladney heard shouting but was not paying much attention to it. The three were kind of

struggling and talking and then Gladney heard a shot and saw a flash in the middle of them. Gladney said the flash was between the defendant and Irene. Gladney testified that after the shooting the defendant told him that "George got shot, that's just what he needed."

Willie Edward Garrette testified that when he drove his car into the driveway he saw the defendant, Irene, Jossie White, Gladney and the victim standing together and arguing. Garrette testified that Irene and the defendant were about a step away from White and facing him when Garrette heard a gunshot. Garrette heard someone say, "Jossie, I didn't mean it." He thought the defendant made that statement but he was not sure.

Philip Berg testified that in the summer of 1974 he purchased a Titan automatic .25 caliber gun and gave it to the defendant. He testified that on December 30, 1974, at approximately 11:30 a.m., the defendant and Ruth Lofton, another sister, came to his house and gave him a Valentine candy box containing the gun wrapped in newspaper and a clip containing several shells. He said Ruth gave him the box and explained that there had been a party and an argument during which Gloria had been knocked unconscious by George White. Ruth told Berg that there had been a gun and that it went off. Berg testified that the defendant had said nothing to him about what had happened.

Taken together, this evidence shows that White was shot by a .25 caliber gun and that the defendant possessed such a gun. Furthermore, the evidence shows that the defendant was in close proximity to the victim at the time of the shooting and said that he deserved what he got. She might have said that she did not mean to shoot him. In addition, she had been arguing with the victim. This evidence provides probable cause to believe that a felony had been committed and that Gloria Lofton had probably committed it.

The defendant argues that the information charging first degree murder should have been dismissed because the evidence produced in the preliminary hearing did not support the charge. Again, the defendant argues that the evidence produced at the preliminary hearing was insufficient to show that she had shot George White and that she shot him with the intent to kill.

A district attorney is permitted to file an information containing such charges as the facts adduced at the preliminary examination warrant. The information must be based upon the facts brought out on the preliminary examination.[2] We find that the evidence adduced at the preliminary examination is sufficient to support the charge of first degree murder in the information. As indicated above, there was sufficient evidence at the preliminary examination to support a finding of probable cause that the defendant had committed the felony. In addition, there was sufficient evidence at the preliminary hearing to support the issuance of information for first degree murder because there was evidence that George White died of a gunshot wound to the chest. The fact that he was shot in a vital part of his body is sufficient to raise a presumption that the defendant shot him with the intent to kill. *Garcia v. State, supra.*

The defendant alleges the trial court erred in not dismissing the information at the conclusion of the testimony because there was no evidence in the record to support the element of intent to kill.

---

[2] "971.01 *Filing of the information.* (1) The district attorney shall examine all facts and circumstances connected with any preliminary examination touching the commission of any crime if the defendant has been bound over for trial and, subject to s. 970.-03(10), shall file an information according to the evidence on such examination subscribing his name thereto." *See also: Mark v. State,* 228 Wis. 377, 383–84, 280 N.W. 299 (1938).

This argument must be analyzed under the tests set forth in *State v. Duda,* 60 Wis.2d 431, 439, 210 N.W.2d 763 (1973):

"The test of sufficiency of the evidence on a motion to dismiss in the trial court is the same as that on appeal. It is whether, considering the state's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt."

Without reviewing all of the evidence, suffice it to say that considering the state's evidence in the most favorable light it was sufficient to prove the defendant's guilt beyond a reasonable doubt. The evidence shows that George White bled to death after receiving a gunshot wound in the area of the left chest that punctured the left lung and passed through a portion of the pulmonary artery. In the opinion of the doctor who performed the autopsy, the bullet entered the body at a 90 degree angle.

There was evidence that the bullet that killed George White was fired from the .25 caliber automatic pistol owned by the defendant; that the gun was six to eighteen inches from White's body when it was fired; and that eight pounds of pull were required for the trigger to discharge the gun.

There was evidence of a series of arguments between George White and his two sisters-in-law, the defendant and Irene Lofton. White had been pushing both of them and knocked Irene to the ground.

Scott Story testified that when he saw a muzzle flash from what appeared to be a gun and when he heard a shot the defendant was facing George White. Story testified that the muzzle flash came from the direction of the defendant.

James Gladney testified that after the shooting he thought he heard Gloria say, "George was wrong." Gladney said that the defendant and Irene asked him to take them home and while he was driving the defendant said that if George got shot that's what he needed.

The defendant testified to a series of arguments with George White during which White struck and knocked down both her and Irene. She testified that outside the house White hit her in the chest and threw her against an old car. When she attempted to kick him in the leg, White caught her by the collar, shoved her around, hit her in the head and threw her on top of a car. When White left her and approached Irene, the defendant found her purse and looked for her keys. When she reached in her purse she found the gun that had been there since Berg gave it to her. She said she took out the pistol and was going to show it to White to see if that would make him move his car so that she could get her car out and leave. She approached White with the pistol at her side and, when he turned around, he saw it and started reaching for it. They scuffled over the gun and White shook her back and forth trying to take the gun out of her hand. After they quit scuffling White hit her on her head, and when she was struck on the head she heard a little noise. After she was hit she fell backward into the neighbor's driveway. She blacked out for a few seconds and when she regained consciousness White was standing directly over her with his foot raised as if to stomp her in the stomach. Then White turned and ran. She did not realize at that time that White had been shot.

Considering this evidence in the light most favorable to the state, if it were believed and rationally considered, it was sufficient to prove the defendant guilty of first degree murder beyond a reasonable doubt. The defend-

ant admitted having the gun. Scott Story saw the muzzle flash come from the direction of the defendant. Again, the fact that the victim was shot in the vital part of his body creates the rebuttable presumption that the defendant shot with the intent to kill.

The defendant next contends that the prosecutor in his rebuttal argument made an impermissible comment upon her failure to come forward with evidence in violation of her Fifth Amendment right against self-incrimination.

During his rebuttal argument to the jury the prosecutor made the following statement, as later reconstructed out of the presence of the jury:

"At least Mr. Story came forward with what he believed was the truth. And here's where the point comes in, that's more than the defendant who wanted several, who needed several more months than Mr. Story and then lied again."

When the statement was made the defense attorney immediately objected and the court stated that the defendant was not obligated to come forward with anything. The jury was excused and the defense attorney moved for a mistrial based on the improper comment of the district attorney that asked the jury to infer something improper from her assertion of her constitutional right. The prosecutor argued that his comments were only in regard to her testimony.

The trial court denied the motion for a mistrial but instructed the jury upon its return that the defendant in a criminal case is necessarily presumed innocent and the state had the burden of proving the guilt of a defendant of any alleged offense beyond a reasonable doubt. The court added the defendant is not required to admit anything or come forward with anything. The prosecutor then continued with his rebuttal argument.

On this appeal the defendant argues that the prosecutor's comment violated her Fifth Amendment right because it was directed solely to the point that she did not come forward with her statement before trial. To support her argument that her Fifth Amendment right against self-incrimination was violated she relies on *Doyle v. Ohio,* 426 U.S. 610 (1976); *United States v. Anderson,* 498 F.2d 1038 (D. C. Cir. 1974); *United States v. Moore,* 484 F.2d 1284 (4th Cir. 1973); *Deats v. Rodriguez,* 477 F.2d 1023 (10th Cir. 1973); and *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir. 1973).

In *Doyle,* the prosecutor during cross-examination asked the defendant why he had not told the police at the time of his arrest the same story he told during his testimony at trial. The Supreme Court reversed the conviction on the ground that it was improper to comment upon the defendant's silence at the time of his arrest at which he had been given his *Miranda* warning telling him he had a right to remain silent.

The four other federal cases cited by the defendant were concerned with questions or comments in regard to the defendant's silence or failure to answer individual questions at the time of his arrest. In the instant case Gloria Lofton gave a statement to the police on the day of the shooting. She denied that she knew who shot George White and she denied that she shot George White. At the trial she admitted that she was holding the gun when she heard a noise.

The testimony of Scott Story was important to the state because he stated that he saw a muzzle flash come from the direction of the defendant. Story did not give a statement to the police until eight months after the shooting.

Contrary to the argument by the defendant, the prosecutor's comment during the rebuttal argument was not

aimed at the defendant's silence. The prosecutor was arguing that the testimony of Scott Story was more credible than the testimony of the defendant because he did not wait until trial to tell the truth. Unlike the situation in *Doyle* and the other federal cases, the prosecutor was not commenting upon defendant's silence at the time of her arrest. The defendant's Fifth Amendment right against self-incrimination was not violated and she is not entitled to a new trial on the basis of the district attorney's statement.

The defendant argues that she is entitled to a new trial because the trial court had failed to instruct the jury on homicide by negligent use of a weapon.

The court instructed the jury on the first and second degree murder and homicide by reckless conduct. The defendant requested the court to give an instruction on homicide by negligent use of a weapon but the court refused. The court did not think that the testimony that had been adduced constituted the negligent use of a weapon.

The standard by which to determine whether to instruct the jury on a lesser included offense has been stated in *Day v. State,* 55 Wis.2d 756, 759, 201 N.W.2d 42 (1972), citing *State v. Anderson,* 51 Wis.2d 557, 560, 187 N.W.2d 335 (1971) and *State v. Bergenthal,* 47 Wis.2d 668, 675, 168 N.W.2d 16 (1970):

"The test or standard for determining when lesser degrees of homicide than that charged are to be submitted to the jury has been clearly stated to be:

" 'To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge . '. '. .'

" ' ' "The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all

lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. . . ." ' "

The crime of homicide by reckless conduct is defined in sec. 940.06, Stats., which provides:

"(1) Whoever causes the death of another human being by reckless conduct may be fined not more than $2,500 or imprisoned not more than 5 years or both.

"(2) Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin."

The crime of homicide by negligent use of vehicle or weapon is defined in sec. 940.08, Stats., which provides:

"(1) Whoever causes the death of another human being by a high degree of negligence in the operation or handling of a vehicle, firearm, airgun, knife or bow and arrow may be fined not more than $1,000 or imprisoned not more than one year in county jail or both.

"(2) A high degree of negligence is conduct which demonstrates ordinary negligence to a high degree, consisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another."

In the instant case the support for either or both of these instructions would have to be found in the defendant's testimony. She testified to a series of arguments involving herself, Irene Lofton and George White. She also testified that she and Irene were being pushed and hit by White. Into this situation the defendant intro-

duced the murder weapon when she held the gun in an attempt to convince George White to move his car.

On the basis of her own testimony the defendant created a situation of unreasonable risk and high probability of death or great bodily harm to another. This much is an element of both homicide by reckless conduct and homicide by negligent use of a weapon. However, by wielding a gun in this situation the defendant demonstrated more than ordinary negligence to a high degree—she demonstrated a conscious disregard for the safety of another and a willingness to take known chances of perpetrating injury. This was not a situation of people calmly discussing a problem and casually examining a weapon. It is because of the violent situation in which the defendant brought out the gun that her actions constitute reckless conduct rather than a high degree of negligence.

Because of the situation that existed when the defendant brought the gun into view, there was not a reasonable ground in the evidence for acquittal on a charge of homicide by reckless conduct and for conviction on a charge of homicide by negligent use of a weapon. If the jury believed the defendant it could convict her of homicide by reckless conduct. There was no room in the evidence for a conviction of homicide by negligent use of a weapon. Therefore the trial court acted correctly in refusing to give the instruction on homicide by negligent use of a weapon.

Finally, the defendant requests a reversal of her conviction in the interest of justice.

This court stated:

"In order to grant a new trial in the interest of justice under sec. 251.09, Stats., this court must be convinced, viewing the record as a whole, that there has been a

probable miscarriage of justice or that a new trial would lead to a different result." *Rohl v. State,* 65 Wis.2d 683, 703, 223 N.W.2d 567 (1974).

In the instant case the defendant was charged with first degree murder and convicted of homicide by reckless conduct. A review of the record fails to show any basis for finding a probable miscarriage of justice or that a new trial would lead to a different result.

*By the Court.*—Judgment and order affirmed.

ABRAHAMSON, J. (*concurring*). In its discussion of Lofton's claim that the complaint failed to allege facts sufficient to show an intent to kill and that the evidence regarding intent produced in the preliminary hearing and at trial was insufficient to support the charge, the majority invokes the rules that "there is a presumption that one intends the natural and probable consequences of his acts" and that "in cases of first-degree murder, the fact that the defendant shot his victim in a vital part raises a presumption of intent."

The term "presumption" is used in many ways in the law. In the case at bar the court is using the word presumption to describe the process of reasoning that may lead the trier of fact to conclude that intent was present. For other cases using the presumption in a similar manner, *see State v. McCarter,* 36 Wis.2d 608, 612, 153 N.W.2d 527 (1967); *Smith v. State,* 69 Wis.2d 297, 305, 230 N.W.2d 858 (1975).

The court is saying that a trier of fact logically and correctly may find the requisite intent from the defendant's words or conduct, not because the law requires such a finding, but because jurors using ordinary reasoning may determine that the defendant's words or conduct are inferentially probative of the requisite intent. Thus, in the instant case, we conclude that the evidence

concerning Lofton's words and behavior was sufficient to prove intent to kill beyond a reasonable doubt.

The majority opinion should not be interpreted as approving "presumption language" which appears in a number of the Uniform Criminal Jury Instructions defining the element of intent.[1] The language of Wis. J. I. —Criminal 1100, First Degree Murder, is typical:

---

[1] According to the *Report of the Uniform Criminal Jury Instructions Committee to Wisconsin Criminal Court Judges,* dated Sept. 30, 1977, such language appears in the following criminal jury instructions:

| | |
|---|---|
| 1100 | 1st Degree Murder; Cause not in Issue |
| 1102 | 1st Degree Murder; Cause in Issue |
| 1105 | Attempted 1st Degree Murder |
| 1125 | Abortion |
| 1135 | Manslaughter; Heat of Passion |
| 1145 | Manslaughter; In Exercise of Self-Defense |
| 1195 | Assisting Suicide |
| 1220 | Battery |
| 1225 | Battery to a Police Officer |
| 1240 | Aggravated Battery |
| 1265 | Abandonment |
| 1302 | Highway Obstruction |
| 1316 | Giving a False Alarm |
| 1317 | Interference with Fire Alarm System |
| 1318 | Interference with Fire-Fighting |
| 1319 | Interference with Fire-Fighting Equipment |
| 1326 | Sale of Pistol to Minor |
| 1350 | Possession of Explosives for Unlawful Purpose |
| 1352 | Administering a Dangerous or Stupefying Drug |
| 1380 | Defamation |
| 1400 | Criminal Damage to Property |
| 1404 | Arson |
| 1405 | Arson to Defraud an Insurer |
| 1408 | Arson, Other than a Building |
| 1441 | Theft |
| 1453 | Theft by Fraud |
| 1473A | Extortion (Threat to Acuse of Crime) |
| 1473B | Extortion (Threat to Injure) |
| 1498 | Shoplifting |

"While this intent to kill must be found as a fact before you can find the defendant guilty of murder in the first degree, it must be found, if found at all, from his acts and his words and statements, if any, bearing upon his intent. You cannot look into a man's mind to find out his intent. When there are no circumstances to prevent or rebut *the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts.* If one person (assaults another violently with a dangerous weapon) (administers poison) likely to kill, and the person thus (assaulted) (poisoned) dies therefrom, then, when there are no circumstances to prevent or rebut the presumption, the *legal and natural presumption* is that death was intended."[2] (Emphasis added.)

This Court has approved instructions which include the above "presumption language" in a number of cases, but its continued use is open to question.[3] First, the language may not satisfy the requirements of sec. 903.03

---

[2] This instruction concerning "the natural and probable consequences" of acts knowingly done or knowingly committed has become known as a *"Mann"* instruction, taking its name from the case where the giving of the instruction was held to be error, requiring reversal of a conviction even though no objection was raised at trial. *Mann v. United States,* 319 F.2d 404 (5th Cir. 1963), cert. denied, 375 U. S. 986.

[3] The Uniform Criminal Jury Instructions Committee to Wisconsin Criminal Court Judges has adopted the following new language as a substitute for the "presumption language":

"Intent to ———— must be found as a fact before you can find the defendant guilty of ————. You cannot look into a person's mind to find out his/her intent. You may determine such intent directly or indirectly from all the facts in evidence concerning this offense. You may consider any statements or conduct of the defendant which indicate his/her state of mind. You may find intent to ———— from such statements or conduct. You are the sole judges of the facts and you must not find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant intended to ————."

(3), Wis. Rules of Evidence.[4] Second, words such as "infer" and "presume," which describe the jury's reasoning process, may not be useful in telling the jury what it must do. ". . . [U]tterance of the quoted platitude does no useful purpose, since insofar as the statement has logical validity the jury would know it anyhow."[5]

Courts increasingly view the "presumption language" as confusing, unnecessary and prejudicial. The jury may be misled into believing the question before it is whether a reasonable person similarly situated would have had the requisite intent, rather than whether the defendant actually had the requisite intent. The language may be read as relieving the prosecution of the burden of proving each element of the offense beyond a reasonable doubt and shifting the burden to the defendant.[6] If the instruction is construed as creating the impression that

---

[4] Sec. 903.03(3), Wis. Rules of Evidence provides:

"(3) INSTRUCTING THE JURY. Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so. In addition, if the presumed fact established guilt or is an element of the offense or negatives a defense, the judge shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt."

[5] *United States v. Barash,* 365 F.2d 395, 402 (2d Cir. 1966).

[6] *United States v. Robinson,* 545 F.2d 301 (2d Cir. 1976); *United States v. Barash,* 365 F.2d 395, 402 (2d Cir. 1966); *United States v. Bertolotti,* 529 F.2d 149, 159 (2d Cir. 1975); *United States v. Bristol,* 473 F.2d 439, 443 (5th Cir. 1973); *United States v. Littlebear,* 531 F.2d 896, 898 (8th Cir. 1976); *McCarty v. United States,* 409 F.2d 793, 799 (10th Cir. 1969); *Cohen v. United States,* 378 F.2d 751, 755 (9th Cir. 1967), cert. denied, 389 U.S. 897. *See also* 1 Devitt and Blackmar's *Federal Jury Practice and Instructions,* sec. 14.13 (3d ed. 1977).

*Cf. State v. Wells,* 51 Wis.2d 477, 489, 187 N.W.2d 328 (1971) (dissenting opinion).

the defendant has the burden of persuasion to disprove an element of a crime, constitutional error may be claimed.[7]

The majority opinion does not address the issue whether "presumption language" in an instruction on the element of intent is valid, and it should not be interpreted as approving such language.

I have been authorized to state that Mr. Justice Heffernan and Mr. Justice Callow join in this concurring opinion.

---

[7] *Mullaney v. Wilbur,* 421 U.S. 684 (1975); *Patterson v. New York,* 432 U.S. 197 (1977).