STATE, Plaintiff-Respondent, v. George DRESKE, Defendant-Appellant.†
Donald DRESKE, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–453–CR. Argued November 15, 1978.—
Decided January 29, 1979.*
(Also reported in 276 N.W.2d 324.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

62

For the defendant-appellant and plaintiff-in-error there were briefs by *James R. Glover* and *James M. Shellow* of *Shellow & Shellow*, Milwaukee, and briefs by *Randall J. Sandfort* and *William M. Coffey* of *Coffey & Coffey*, Milwaukee, with oral argument by *James R. Glover* on behalf of defendant-appellant George Dreske, and oral argument by *Dennis M. Coffey* of *Coffey & Coffey* on behalf of plaintiff-in-error Donald Dreske.

For the plaintiff-respondent and defendant-in-error, there were briefs by *William L. Gansner*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

Before Decker, C.J., Cannon, P.J. and Robert W. Hansen, Reserve Judge.

CANNON, P.J. Defendant-appellant's convictions are the first criminal convictions attained under the new Wisconsin Campaign Financing Act (CFA), enacted in ch. 334, Laws of 1973. The appellant challenges the constitutionality of the penalty sections of the CFA, and contends that various parts of the Act were improperly applied by both the trial judge and the District Attorney's office.

This case is related to the unsuccessful attempt by State Senator James C. Devitt to secure the Republican nomination for Governor of Wisconsin in 1974. *See State v. Devitt,* 83 Wis.2d 262, 262 N.W.2d 73 (1978). The defendant-appellant, George Dreske, is the father of the defendant-appellant, Donald Dreske. On July 23, 1976, the Dreskes were charged by criminal complaint with numerous violations of the CFA, in particular secs. 11.-24(1) and 11.61(1)(a), Stats.

An information was filed by the District Attorney at the preliminary hearing, held August 7, 1976. The information charged both defendants with what is commonly known as "laundering" campaign contributions to disguise the actual supplier of the funds.[1] Eight such counts were charged against George Dreske. Five counts were charged against Donald Dreske. The charges against George and Donald Dreske, although brought under the same statute, arose out of separate and distinct incidents. The defendants were not charged jointly with

---

[1] Although all the counts are not identical, a typical count reads as follows:

*COUNT #1:*
During the second week in September, 1974, at 7635 West Oklahoma Avenue, City and County of Milwaukee, State of Wisconsin, the defendant George Dreske, as party to a crime, did intentionally and feloniously directly furnish funds to another person, Ross Macdonald, for the purpose of making a contribution in other than his own name, to wit: in the name of Ross Macdonald, contrary to Wisconsin statutes sections 11.24(1), 11.61(1)(a) and 939.05.

any one offense, although they were charged as parties to a crime.

The case was tried beginning March 23, 1977. On March 31, 1977, the jury returned verdicts finding George Dreske guilty as charged on all eight counts of the information. Donald was found guilty as charged on four counts of the information, but acquitted on one count. George Dreske was fined $2,000 on each of the first five counts of the information, and placed on probation for three years on each count, the terms of probation to run concurrent. The first year of probation for count 1 was to be spent during non-working hours in the county jail, in accordance with sec. 973.09 (4), Stats. Donald Dreske was fined $250 on each count.

George Dreske appeals his conviction, and Donald Dreske brings writs of error. Six issues are raised by one or both defendants:

1. Does the penalty scheme of secs. 11.60 and 11.61, Stats., as it pertains to 11.24 (1), Stats., violate due process and equal protection?

2. Did the trial court incorrectly instruct the jury on the issue of intent?

3. Do the charges against George Dreske improperly fractionate single offenses in violation of the double jeopardy clauses of the state and federal constitutions?

4. Did the joinder of George and Donald Dreske's trials deny George Dreske the right to a fair trial on count 8 of the information?

5. Was sufficient evidence adduced to find George Dreske guilty of counts 6 and 7?

6. Was sufficient evidence adduced to find Donald Dreske guilty of counts 9, 10 and 11?

## CONSTITUTIONALITY OF PENALTY PROVISIONS

The defendants were convicted on each count of violating secs. 11.24 (1) and 11.61 (1) (a), Stats. Section

11.24(1) contains three sentences, each of which prohibits certain activity. The defendants were prosecuted on each count for violating the second sentence, which provides: "No person may, directly or indirectly, furnish funds or property to another person for the purpose of making a contribution in other than his own name."

Section 11.24 contains no penalty provision. The penalty provisions for the Campaign Financing Act are contained in secs. 11.60 and 11.61, Stats. Section 11.60 (1) provides: "Civil Penalties. Any person, committee or group who violates this chapter may be required to forfeit not more than $500 for each violation."

Section 11.61(1)(a) provides: "Criminal penalties; prosecution. Whoever intentionally violates ss. 11.05(1), (2), (2g) and (2r), 11.07(1) and (5), 11.10(1), 11.12 (5), 11.23(6) and 11.24(1) may be fined not more than $10,000 or imprisoned not more than 3 years or both."

The defendants contend that although sec. 11.60 is labeled civil, its penalty scheme, at least as applied to the second sentence of 11.24(1), is actually criminal. Since due process and equal protection are violated when the same act may be punished under more than one criminal penalty section, *State v. Roggensack*, 15 Wis.2d 625, 113 N.W.2d 389, 114 N.W.2d 459 (1962), the defendants conclude the penalty scheme of the Campaign Financing Act is a violation of due process and equal protection.

A statute is presumed constitutional. *Wisconsin Solid Waste Recycling Authority v. Earl*, 70 Wis.2d 464, 478, 235 N.W.2d 648 (1975). The party challenging the constitutionality of a statute has the burden of establishing its unconstitutionality beyond a reasonable doubt. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis.2d 32, 205 N.W.2d 784 (1973). Thus the defendant has a heavy burden to prove to this court that the penalty scheme encompassed in secs. 11.60 and 11.61 is uncon-

stitutional. We hold this burden of persuasion was not met.

It is clear that the legislature intended sec. 11.60 to be a civil penalty section, and sec. 11.61 to be criminal. Section 11.60 is labeled "Civil Penalties"; 11.61 is labeled "Criminal Penalties." The legislature of this state has defined "crime" as: "[C]onduct which is prohibited by state law and punishable by *fine* or imprisonment or both. Conduct punishable only by a *forfeiture* is not a crime." Sec. 939.12 [Emphasis supplied.] The penalty in sec. 11.60 involves a $500 forfeiture, while sec. 11.61 involves what has been labeled a fine. While labels cannot always be taken for face value, the label and penalty provisions in the CFA are quite instructive in our analysis of whether sec. 11.60 is a civil or criminal section.

In addition, the legislative history of the Campaign Financing Act illustrates the legislature intended to provide both civil and criminal penalty sections for violations of the act. Assembly Amendment 2 to Senate Bill 5 provided for one section having misdemeanor and felony divisions. The eventual Engrossed Senate Bill 5 separated civil and criminal penalties into secs. 11.60 and 11.61, and labeled them appropriately. This was the form of the bill as eventually passed by the legislature.

The separate penalty sections in the Campaign Financing Act manifest a legislative intention to separate the less serious or "negligent" violations of the Act from the more serious "intentional" violations. The legislative history, and a plain reading of the statutes, convinces this court that sec. 11.60 is a civil penalty. As such, there are not two criminal penalty sections applicable to the same action. The defendants concede there is no constitutional violation in a penalty scheme which subjects the same act to both a civil and a criminal penalty.

The defendants, however, contend that sec. 11.60 is in effect a criminal statute as applied to the particular sentence of 11.24(1), under which they were convicted. Section 11.24(1) contains three prohibitions:

1. No person may, directly or indirectly, make any contribution other than from funds or property belonging to the contributor.

2. No person may, directly or indirectly furnish funds or property to another person, *for the purpose of* making a contribution in other than his own name. [Emphasis supplied.]

3. No person may intentionally accept or receive any contribution made in violation of this subsection.

The defendants were convicted of violating the sentence we have numbered 2. The "for the purpose of" language in number 2 cannot be distinguished from an "intent" requirement. The defendants argue, and the state concedes, that one cannot unintentionally violate the second sentence of sec. 11.24. The defendants conclude from this, that as applied to the second sentence of sec. 11.24, sec. 11.60 is in fact a criminal statute. Relying on *Roggensack, supra,* the defendants contend that two criminal penalty statutes involving different penalties for violations of the same act violate due process and equal protection.

We agree that an anomaly exists in using sec. 11.60 to punish violations of the second sentence of sec. 11.24, while at the same time contending that sec. 11.60 differs from sec. 11.61 in that sec. 11.60 violations do not require intent. Admitting the anomaly, however, sec. 11.60 is still a civil statute. The fact that in certain situations a violation of sec. 11.60 will involve intent does not make sec. 11.60 a criminal statute. Section 11.60, as we have noted, was intended by the legislature to be civil, and a plain reading of the statute indicates it is civil in nature. The defendants have not shown beyond a

reasonable doubt that the penalty scheme embodied in sec. 11.60 is criminal. We conclude that since sec. 11.60 is a civil penalty section, the penalty sections of the CFA are constitutional as they apply to this action.[2]

## INSTRUCTION ON INTENT

The Dreskes were convicted under sec. 11.61(1)(a), Stats., which provides that "[W]hoever intentionally violates . . . [sec.] 11.24(1)" may be penalized as designated. The defendants argue that in order for a violation of sec. 11.61(1)(a) to occur, a person must have knowledge of the CFA and, in spite of that knowledge, intentionally violate it. Accordingly, the defendant requested the trial court to instruct the jury that the prosecution "must prove that the defendant knowingly did an act which the law forbids purposely intending to violate the law," and "that [the defendant] acted in a fashion or manner which he knew was corrupt or illegal, and that he had a mental purpose to violate the law."

The state contends that the statute does not require knowledge of the statute, but only that the defendants intended to "furnish funds . . . for the purpose of making a contribution in other than his own name." The trial court apparently agreed with the state, and refused the instruction offered by the defense.[3] The defendants charge this was error. We disagree.

---

[2] Most cases which have involved acts prohibited by both criminal and civil sanctions are brought under the double jeopardy clause of the State or Federal Constitution. "It has been generally held that the double-jeopardy clause prohibits punishing criminally twice or attempting to do so and does not apply to prosecution both of a civil sanction and a criminal one." *Roggensack, supra.*

[3] The following instruction on "intent" was given by the court:

"Intentionally" means that the defendant either had a purpose to do the thing or caused the result specified or believed that his

An attempt to require an "actual knowledge" provision in sec. 11.61 appears to have surfaced during the debate regarding the Campaign Financing Act. Legislative Reference Bureau files reveal that the original Senate Bill 5, introduced May 2, 1974, provided:

11.61 Criminal Penalties, Prosecution. (1) Whoever intentionally violates this chapter may be fined not more than $10,000 or imprisoned not more than 3 years in the state prison, or both.

On May 8, 1974, amendment 14 to Senate Bill 5 was offered by Senator Murphy, suggesting a knowledge requirement:

1. On page 51, line 10, delete the material beginning with "Whoever" and ending with "both" in line 12 and substitute "Whoever violates this chapter with knowledge that the action committed or omitted is a violation of the law may be fined not more than $1,000 or imprisoned not more than 6 months, or both".

This amendment was apparently accepted by the Senate, because Engrossed Senate Bill 5, introduced on May 20, 1974, is identical to the above amendment.

act, if successful, would cause that result. In addition, the defendant must have knowledge of those facts which are necessary to make his conduct criminal and which are set forth after the word "intentionally."

You cannot look into a man's mind to find out his intent. While this intent, if it is found as a fact before you can find the defendant guilty of unlawful political contributions it must be found, it found at all, from his acts and his words and his statements bearing upon his intent. When there are no circumstances to rebut the presumption, the law presumes that a person intends all of the natural, probable, and usual consequences of his deliberate acts.

The Criminal Code of Wisconsin provides that criminal intent does not require proof of knowledge of the existence or constitutionality of the section under which he is prosecuted or the scope or meaning of the terms in that section. Ignorance of the law is no excuse.

Engrossed Senate Bill 5 was sent to the Conference Committee on Campaign Finance Reform, undoubtedly to work out conflicts between the House and Senate version of the Act. A memorandum prepared by staff members on May 31, 1974, compared the differences between Engrossed Senate Bill 5, and an amendment offered by the Assembly to Senate Bill 5:

11.61(1)   Difference:   Burden of proof

Senate bill requires that defendant act "with knowledge" that the action committed or omitted is a violation of the law.

Assembly bill requires that defendant act "intentionally" as defined in s. 939.23.

An amendment offered by this committee on June 13, 1974, provided:

11.61  Criminal penalties; prosecution.  (1) (a)  Whoever intentionally violates ss. 11.05(1) and (2), 11.07(1) and (5), 11.10(1), 11.12(5), 11.22(1)(a) and (2)(e), 11.23 (6) and 11.24(1) may be fined not more than $10,000 or imprisoned not more than 3 years in the state prison, or both.

With minor changes inconsequential to the defendants' case, this same wording appears in the present sec. 11.61 (1)(a), Stats. From this documentation, we have no doubt that the legislature considered the interpretation suggested by the defendants, but in its wisdom expressly rejected a statutory requirement of "actual knowledge" of the existence of sec. 11.61, Stats. Definition 12 of sec. 11.01 of the CFA defines "intentionally" as the meaning given under sec. 939.23, Stats. Section 939.23, Stats., provides:

(3) "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result. . . . [T]he actor must have knowledge of those facts

which are necessary to make his conduct criminal and which are set forth after the word "intentionally".

. . . .

(5) *Criminal intent does not require proof of knowledge of the existence of constitutionality of the section under which he is prosecuted* or the scope or meaning of the terms used in that section. [Emphasis supplied.]

We are bound by the Wisconsin Constitution to honor the legislature's intention.

Requiring the prosecution to prove beyond a reasonable doubt that a defendant had actual knowledge of the statute would be in many cases an insurmountable burden. The Campaign Reform Act was intended to correct situations wherein:

"[T]he present unregulated method of conducting political campaigns in this state has imposed irksome and humiliating conditions upon independent and honorable candidates and subjected the electorate to the temptations and corrupting influences which always attend the unrestricted distribution of money."[4]

We cannot conclude the legislature would attempt to reform election financing by enacting a criminal penalty section with the "knowledge" provision demanded by the defendant.

We uphold the trial court's decision not to give the jury instruction requested by the defendants.[5]

---

[4] Letter to the Senate by Governor Patrick J. Lucey on July 2, 1974, approving Ch. 334, Laws of 1973. Source: Legislative Reference Bureau file.

[5] We make no finding whether the trial court's instruction to the jury that "the law presumes that a person intends the natural, probable and usual consequences of his deliberate acts" was proper. It is not an issue in this case. However, we note that the appropriateness of such instruction is in question by members of the Wisconsin Supreme Court. *See Lofton v. State*, 83 Wis.2d 472 (Abramson, J., concurring), 266 N.W.2d 576 (1978).

## MULTIPLICITY

This issue concerns George Dreske only. Counts 2 and 3 of the information involve contributions by McDonald and his wife to a campaign committee from funds supplied by George Dreske. Both contributions were reimbursed by George Dreske with a single $200 cash reimbursement. Counts 4 and 5, involving contributions by Dreske's secretary and her mother, were reimbursed by a single $200 check from George Dreske. Counts 6 and 7 involved the purchase of fund-raising dinner tickets by George Dreske in the names of two people who did not, in fact, purchase the tickets. Both tickets were purchased by George Dreske by submitting a single cashier's check to the fund raisers.

The three pairs of counts noted above each resulted in two convictions, even though each pair involved only a single transfer of funds by George Dreske. The defendant claims this is a fractionalization of a single offense, and as such is a violation of the double jeopardy provision of the State and Federal Constitutions.

Before we reach the substance of this argument, we note that this issue was never raised in the trial court, either during the trial or on post-conviction motion. The Wisconsin Supreme Court has made clear that:

[N]o error of a trial court is to be reviewable as a matter of right on appeal "without first moving in the trial court for a new trial bottomed on such error." The rule is applicable to all claimed error, and applies to criminal jury cases, as well as civil cases. This court may elect to review the claim of error if compelling circumstances are present, but that is discretionary with this court. *Sanford v. State*, 76 Wis.2d 72, 84, 250 N.W.2d 348 (1977).

However, because of the strong possibility of reoccurrence of this very issue, we will consider the argument

raised by the defendant.[6] *Cf. e.g., Ramaker v. State,* 73 Wis.2d 563, 570, 243 N.W.2d 534 (1976).

Multiplicity has been defined as charging a single offense in more than one count. *U. S. v. Free,* 574 F.2d 1221 (5th Cir. 1978). Multiplicitous charges violate the double jeopardy provision of both the State and Federal Constitutions. *State v. George,* 69 Wis.2d 92, 230 N.W. 2d 253 (1975).

Determining when multiplicitous charging exists is not simple. In *Blenski v. State,* 73 Wis.2d 685, 693, 245 N.W. 2d 906 (1976) the court stated: "The test for multiplicity is whether each count requires proof of an additional fact which the other count or counts do not." However, the court stated:

We think that a better test in a situation such as is involved here is to ascertain the legislative intent. 1 Wright, *Federal Practice and Procedure* (1969), Criminal, pp. 312, 313, sec. 142 (Rule 8). The real question is, therefore, "what is the allowable unit of prosecution?" *Bell v. United States* (1955), 349 U.S. 81, 75 Sup. Ct. 620, 99 L. Ed. 905. *Blenski, supra,* at 694.

We are aided in our search for legislative intent on this issue by the declaration of policy the legislature included in sec. 11.001, Stats. of the Campaign Financing Act.[7] The sentence most succinctly stating the legislative intent provides: "When the source of support *or extent of support* is not fully disclosed . . . the democratic process is subject to a potential corrupting influence." [Emphasis supplied.]

---

[6] We are unconvinced by the defendant's argument that the neglect of the defendant's trial attorney should not prevent the defendant from pursuing this issue on appeal. This court's business is to adjudicate only those issues properly raised at trial within the framework of established legal procedure.

[7] (1) The legislature finds and declares that our democratic system of government can be maintained only if the electorate is

The defendant contends the pairs of counts discussed above were part of a single course of conduct. They cite *Blenski* for the proposition that whether one person or several were falsely listed as the contributors, the public suffers from the same loss of information: the true identity of the contributor. However, the defendant's argument is contrary to the legislature's intent in enacting the CFA.

The purpose of this Act is to insure that the public knows the source and extent of a candidate's financial support. Each instance in which the defendant obfuscates the true identity of a contributor reduces the public's awareness. The defendant's multiplicity argument leads to an unreasonable result. A contributor could channel thousands of dollars to a candidate by convincing innumerable people to send in contributions which the real

informed. It further finds that excessive spending on campaigns for public office jeopardizes the integrity of elections. It is desirable to encourage the broadest possible participation in financing campaigns by all citizens of the state, and to enable candidates to have an equal opportunity to present their programs to the voters. One of the most important sources of information to the voters is available through the campaign finance reporting system. Campaign reports provide information which aids the public in fully understanding the public positions taken by a candidate or political organization. When the true source of support or extent of support is not fully disclosed, or when a candidate becomes overly dependent upon large private contributors, the democratic process is subjected to a potential corrupting influence. The legislature therefore finds that the state has a compelling interest in designing a system for fully disclosing contributions and disbursements made on behalf of every candidate for public office, and in placing reasonable limitations on such activities. Such a system must make readily available to the voters complete information as to who is supporting or opposing which candidate or cause and to what extent, whether directly or indirectly. This chapter is intended to serve the public purpose of stimulating vigorous campaigns on a fair and equal basis and to provide for a better informed electorate.

contributor later reimburses. However, the real contributor, under the defendant's interpretation, would be subject to only one count if he was clever enough to reimburse the "named" contributors by use of a single check or through a single middleman. Furthermore, if he was making up names under which to send contributions,[8] the real contributor would not even have to go through a middleman in order to channel thousands of dollars to a particular candidate. He could send in one check listing as its source a number of contributors, yet be liable for only one count of "laundering" these funds. Such a result is patently absurd and contrary to the clear intent of the legislature, which noted that not only the source of the contribution is required knowledge for the public, but also the extent of that contribution.

Therefore, we hold that the correct "unit of prosecution" under sec. 11.24(1) for this type of situation is every transfer of funds to another person accompanied by the false listing of any single contributor. Accordingly, the defendants' multiplicity argument fails.

## SEVERANCE

George and Donald Dreske were jointly tried as parties to a crime, even though the defendants were not jointly charged in any of the counts of the information. At no time at trial or on appeal did Donald Dreske move for severance or make a showing of prejudice due to the joint trial.

George Dreske, before the trial, moved for severance on the grounds that a joint trial would deny him "the opportunity to call his co-defendant, Donald Dreske, to testify on his behalf, which testimony would exculpate

---

[8] For example, see counts 6 and 7, *infra.*

the defendant of the commission of the offense alleged in Count 8 of the information."

This motion was considered before trial on November 4, 1976. The attorney for George Dreske made the same argument for severance as detailed in the motion.[9] The motion was denied.

On March 30, 1977, at the close of the prosecution's presentation of evidence, George Dreske attempted to call Donald Dreske to testify on his behalf. The attorney for Donald Dreske refused to allow his client to testify, and the court also refused to "force a defendant charged as party to a crime to testify." An offer of proof was then made outside the presence of the jury indicating that Donald Dreske would have presented testimony refuting a witness for the state on count 8 of the indictment.[10] On appeal, George Dreske again claims that he was prejudiced in respect to count 8 by his inability to call Donald Dreske to the stand.

Whether defendants charged as parties to a crime may be granted separate trials is a matter within the discretion of the trial court. *State v. Suits,* 73 Wis.2d 352, 361,

---

[9] "[I]f there were a severance of the trials, Donald Dreske would testify on behalf of George Dreske, and that testimony would tend to exculpate George Dreske in the commission of one of the crimes in which he is alleged to have committed, and that upon a joint trial that would not—that you would require Donald Dreske or you—Donald Dreske could refuse to testify or he could refuse to surrender his right under the Fifth Amendment, and under the circumstances, severance would be appropriate."

[10] George Dreske's attorney stated to the judge what the substance of Donald's testimony would be if he were called. This court encourages an offer of proof being made by calling the actual witness to the stand and receiving his testimony in a question and answer form, as opposed to a recitation by an attorney of what he believes the witness would testify. *See Milenkovic v. State,* 86 Wis.2d 272, 285, n. 10 (Ct App, 1978).

243 N.W.2d 206 (1976). The discretion of the trial court will not be reversed unless abused.

We hold the defendant, George Dreske, was prejudiced on count 8 of the information by his inability to call Donald Dreske to testify for him. A strong possibility exists that Donald Dreske could have refuted the testimony of the major prosecution witness on that count. Therefore, we reverse the judgment of conviction on count 8 of the information and we order a new trial for George Dreske on that count.[11]

## INSUFFICIENCY OF EVIDENCE ON COUNTS 9, 10 and 11

Donald Dreske was charged in counts 9, 10 and 11 with indirectly furnishing funds to Konopacki and Johnson for the purpose of making a contribution in other than his own name, in violation of sec. 11.24(1), Stats. The contributions by Konopacki and Johnson were reimbursed from the corporate account of Professional Arts Building, Inc. Donald Dreske was president of that corporation.

Konopacki testified that Donald Dreske offered to reimburse him for any tickets Konopacki would buy for a fund raiser for Senator Devitt.[12] Konopacki was later

---

[11] We do not consider whether the entire trial should have been severed. George Dreske's argument has never been based on prejudice from being tried together with Donald, but only his inability to call Donald to refute the state's witness on count 8.

[12] Q Now, Mr. Konopacki, when you purchased these tickets, had Donald Dreske already told you that you would be reimbursed before you purchased those tickets?

A Right, correct.

Q When he told you that you would be reimbursed, what, if anything, did you do?

A I wrote a check on my West Allis account to the Republican Senate Committee for $250

reimbursed when Donald Dreske handed him a check drawn on Professional Arts Building, Inc. funds. Steven Johnson testified to a similar experience.

Donald Dreske contends that since the reimbursement checks were drawn on a corporation, Donald Dreske was not the contributor. As such, the corporation should have been prosecuted for violating sec. 11.38, Stats.,[13] and Donald should not have been prosecuted for violating sec. 11.24(1), Stats. He concludes that the evidence on the counts is insufficient to support a conviction under sec. 11.24(1), Stats.

The defendants' argument is based upon a misreading of sec. 11.24(1). Section 11.24(1) prohibits, either directly *or indirectly*, the furnishing of funds "to another person for the purpose of making a contribution in other than his own name." Donald Dreske, albeit indirectly, was the person who effected the transfer of funds in a proscribed manner. It is inconsequential whether he illegally furnished the funds from a corporate account or from loose change in his pocket. We reject his attempt to conceal his criminal conduct behind the corporate veil of the corporation he heads; such result would be clearly against the intention of the CFA, and would also lead to an inequitable result. Donald Dreske was appropriately charged in counts 9, 10 and 11, and sufficient evidence was presented at trial to find him guilty as charged in those counts.

---

Q And at whose direction then did you write that particular check?

A Don Dreske's.

[13] 11.38 Corporate political contributions prohibited

(1)(a)1. No foreign or domestic corporation . . . , or association organized under ch. 185, may make any contribution or disbursement, directly or indirectly, to any political party, committee, group, candidate or individual for any political purpose or to promote or defeat the candidacy of any person for nomination or election to any public office or any referendum to be submitted to the voters.

## SUFFICIENCY OF EVIDENCE ON COUNTS 6 AND 7

The defendant, George Dreske, finally challenges the decision of the trial court not to grant his motion to dismiss counts 6 and 7. Count 6 of the information, identical to count 7 except for the name of the false contributor, reads:

*COUNT #6:*
during the middle of September, 1974, in the County of Milwaukee, State of Wisconsin, the defendant George Dreske, as party to a crime, did intentionally and feloniously directly furnish funds to another person, A. H. Kreuger, for the purpose of making a contribution in other than his own name, to wit: in the name of Susan Daw, contrary to Wisconsin statutes sections 11.24(1), 11.61(1)(a) and 939.05.

The facts surrounding this count are that George Dreske apparently purchased a number of tickets to a political fund raiser for the Republican Senate Committee. He then went to a bank where A. H. Kreuger was an assistant cashier, and purchased a cashier's check for the amount of $450, made payable to the Republican Senate Committee. Dreske then sent this check to the Republican Senate Committee in Madison, with a list of nine purported purchasers of the fund-raiser tickets. The names of Susan Daw and Peggy Rather were submitted by Dreske, but they were later found to have not purchased the tickets.

Section 11.24(1) prohibits a person's furnishing funds or property to another "for the purpose of making a contribution in other than his own name." The state argues that the furnishing of funds or the "transfer" the statute intended to prohibit, is the "transfer" of funds to the bank in return for a cashier's check. We find this position untenable.

The Campaign Financing Act prohibits the transfer of funds "to another person for the purpose of making a

contribution in other than his own name." In counts 6 and 7, the information does not allege a transfer of funds to a campaign committee, but only a transfer of funds to a bank teller. Transferring funds to a bank teller for whatever nefarious purpose, unaccompanied by any other conduct, is not a crime under sec. 11.24(1).

An information charging no offense is insufficient to bestow jurisdiction on a court. It is defective and void. No verdict or sentence can be based on it. *Champlain v. State*, 53 Wis.2d 751, 754, 193 N.W.2d 868 (1972). A material element of the crime designated in sec. 11.24(1) is absent. The convictions on counts 6 and 7 must accordingly be reversed.

Had the information added that George Dreske tendered the cashier's check to the Republican Senate Committee for the purpose of making a contribution in Susan Daw's name, this court would find the information sufficient on count 6 to charge a crime. But we cannot find an information sufficient, when it does not charge acts which are criminal under the laws of Wisconsin.

The orders and judgment against Donald Dreske are affirmed. The order and judgments against George Dreske are affirmed as to counts 1, 2, 3, 4 and 5, reversed as to counts 6 and 7, and reversed and remanded as to count 8.

*By the Court.*—Affirmed in part, reversed in part and cause remanded.